Front St. Constr., LLC v. Colonial Bank, N.A., 2012 NCBC 25.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 15759

FRONT STREET CONSTRUCTION, LLC; )
HILLSBOROUGH RESIDENTIAL )
ASSOCIATES; EYC HILLSBOROUGH, LLC; )
K & S HILLSBOROUGH RESIDENTIAL, )
LLC; ELLIS Y. COLEMAN, Individually and )
NATALIE Y. COLEMAN, Individually, )
          Plaintiffs )
           )
           )
        v. )
           )
COLONIAL BANK, N.A. and BRANCH )
BANKING AND TRUST COMPANY )
          Defendants )

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 21562

S.T. WOOTEN CORPORATION, )
          Plaintiff )
           )
        v. )
           )
FRONT STREET CONSTRUCTION, LLC; )
HILLSBOROUGH RESIDENTIAL )
ASSOCIATES; EYC HILLSBOROUGH, LLC; )
K & S HILLSBOROUGH RESIDENTIAL, )
LLC; COLONIAL BANK, N.A.; DAWN )
HELMS SHARFF; TRUSTEE and BRANCH )
BANKING AND TRUST COMPANY, )
          Defendants )

**OPINION AND ORDER ON MOTIONS TO DISMISS**

THESE CONSOLIDATED ACTIONS, designated complex business cases by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereafter, all references to the General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now come before the court upon Defendants Branch Banking and Trust Company and Colonial Bank, N.A.'s (a) Motion to Dismiss All Claims, in case No. 10 CVS 15759 ("Front Street Motion") and (b) Motion to Dismiss All Amended Claims, in case No. 09 CVS 21562 ("Wooten Motion") (collectively, "Motions"); and

THE COURT, after considering the Motions, the arguments and briefs in support of and in opposition to the Motions, other submissions of counsel and appropriate matters of record, CONCLUDES that the Motions should be GRANTED in part and DENIED in part, as reflected below in this Opinion and Order.

> *Currin & Currin, by George B. Currin, Esq. and Robin T. Currin, Esq. for Front Street Construction, LLC; Hillsborough Residential Associates; EYC Hillsborough, LLC; K & S Hillsborough Residential, LLC; Ellis Y. Coleman and Natalie Y. Coleman.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Matthew G.T. Martin, Esq. for S.T. Wooten Corporation.*
>
> *Coleman, Gledhill, Hargrave & Peek, by Katherine Thrall Merritt, Esq. for Front Street Construction, LLC.*
>
> *Womble Carlyle Sandridge & Rice, LLP, by Pressly M. Millen, Esq., Christopher W. Jones, Esq. and Amanda G. Ray, Esq. for Colonial Bank, N.A. and Branch Banking & Trust Company.*

Jolly, Judge.

I.

## PROCEDURAL BACKGROUND

[1]     On October 14, 2010, in Wake County civil action No. 10 CVS 15759, Plaintiffs Front Street Construction, LLC ("FS Construction"), EYC Hillsborough, LLC ("EYC"), K & S Hillsborough Residential, LLC ("K&S"), Hillsborough Residential Associates ("HRA"), Ellis Y. Coleman ("Ellis Coleman") and Natalie Y. Coleman ("Natalie Coleman") (collectively, "Front Street Plaintiffs") filed the Amended Complaint and Motion for Temporary Restraining Order and Preliminary Injunction Under N.C.R. Civ. P. 65 ("Front Street Complaint") against Colonial Bank, N.A. ("Colonial") and Branch Banking and Trust Company ("BB&T") (collectively, "Bank Defendants").

[2]     The Front Street Complaint alleges six claims for relief ("Front Street Claim(s)") against Bank Defendants: Breach of Contract ("Front Street Claim One"), Negligence ("Front Street Claim Two"), Negligent Misrepresentation ("Front Street Claim Three"), Fraudulent Concealment ("Front Street Claim Four"), Unfair and Deceptive Trade Practices ("Front Street Claim Five") and Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 of N.C. Rules of Civil Procedure ("Front Street Claim Six").[1]  Front Street Claims One through Six are alleged against BB&T, as successor-in-interest to Colonial; Front Street Claims One and Five are alleged against BB&T directly, for its own actions.

[3]     On November 22, 2010, Bank Defendants filed the Front Street Motion and a brief in support of the Front Street Motion.[2]

---

[1] The court does not address Front Street Claim Six at this time as it is not ripe for adjudication, given that it seeks injunctive relief from a foreclosure proceeding that Defendants have not yet instituted.
[2] Defs. Mem. Supp. Mot. Dismiss All Claims ("Front Street Memo").

[4] On March 23, 2011, the court conducted a hearing on the Front Street Motion and determined that further briefings were necessary. The court required that the Purchase and Assumption Agreement ("PAA") between the Federal Deposit Insurance Corporation ("FDIC") and BB&T, whereby BB&T purchased certain assets and liabilities belonging to Colonial, be submitted, and the court provided the parties an opportunity to brief any issues raised by the PAA.

[5] Subsequently, on July 21, 2011, in Wake County civil action No. 09 CVS 21562, Plaintiff S.T. Wooten Corporation ("Wooten") (collectively with the Front Street Plaintiffs, "Plaintiffs") filed an Amended Complaint[3] ("Wooten Complaint") against FS Construction, EYC, K&S, HRA, Colonial, BB&T and Dawn Helms Sharff ("Sharff"), The Wooten Complaint alleges eight claims for relief, of which only four are alleged against Bank Defendants ("Wooten Claim(s)") (collectively with the Front Street Claims, "Claims"). The Wooten Claims are: Fraudulent Misrepresentation ("Wooten Claim One"), Negligent Misrepresentation ("Wooten Claim Two"), Unfair and Deceptive Trade Practices ("Wooten Claim Three") and Equitable Lien on Funds ("Wooten Claim Four").[4]

[6] On September 13, 2011, Bank Defendants filed the Wooten Motion and a brief in support of the Wooten Motion. Both Motions raise substantially the same factual

---

[3] Wooten initiated its action in 2009. The early stage of the action focused on a lien priority issue. That issue was resolved in 2010 by an order granting summary judgment in favor of Colonial. Wooten then moved to amend its original complaint to add BB&T, as successor-in-interest to Colonial, as a defendant. After Wooten filed the Wooten Complaint, Bank Defendants filed a Notice of Designation under G.S. 7A-45.4, designating the Wooten action as a mandatory complex business case. In December 2011, the Court of Appeals affirmed the judgment on the lien priority issue. *See S.T. Wooten Corp. v. Front St. Constr., LLC,* __ N.C. App. __, 719 S.E.2d 249 (2011).

[4] For clarity and purposes of this Opinion and Order, the court defines Wooten's Claims against Bank Defendants as set forth above. The Wooten Claims, as they actually are alleged in the Wooten Complaint, are as follows: Fifth Cause of Action (Fraudulent Misrepresentation), Sixth Cause of Action (Negligent Misrepresentation), Seventh Cause of Action (Unfair and Deceptive Trade Practices) and Eighth Cause of Action (Equitable Lien on Funds).

and legal issues and seek to dismiss all Claims, pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

[7]     On October 28, 2011, the parties filed a Joint Motion to Consolidate for All Purposes ("Motion to Consolidate"), seeking consolidation of the above-captioned actions on the basis that both cases share factual, legal and procedural similarities.

[8]     On October 31, 2011, the court granted the Motion to Consolidate and ordered that both actions be consolidated for all purposes.

[9]     The Motions have been fully briefed and are ripe for determination.

II.

FACTUAL BACKGROUND

Among other things, the Front Street and Wooten Complaints allege that:

A.

The Parties

[10]     FS Construction is a limited liability company organized and existing under the law of the State of North Carolina and is engaged in the business of real estate development in North Carolina.[5]

[11]     Wooten is a corporation organized and existing under the law of the State of North Carolina and is engaged in the construction business in North Carolina.[6]

[12]     EYC is a limited liability company organized and existing under the law of the State of North Carolina and is engaged in the business of real estate development in North Carolina.[7]

---

[5] Front Street Compl. ¶ 1.
[6] Wooten Compl. ¶ 1.
[7] Front Street Compl. ¶ 2.

[13]    K&S is a limited liability corporation organized and existing under the law of the State of Delaware.  K&S is engaged in the business of real estate development in North Carolina.[8]

[14]    HRA is a New York joint venture between EYC and K&S and is engaged in the business of real estate development in North Carolina.[9]

[15]    Ellis Coleman is a citizen and resident of Charleston, South Carolina and is the managing member of EYC.[10]

[16]    Natalie Coleman is a citizen and resident of Charleston, South Carolina.[11]

[17]    At times material, Colonial was a national bank with its principal place of business in Alabama.[12]  Colonial provided banking services, including loans for commercial developments, to citizens in other states, including North Carolina.[13]  On August 14, 2009, the State of Alabama Banking Department took possession and control of Colonial and appointed the FDIC as receiver.[14]

[18]    BB&T is a North Carolina banking corporation, with its principal place of business in North Carolina.[15]  BB&T provides comprehensive banking services in Wake County, North Carolina, among other places.[16]

[19]    Sharff is a citizen and resident of Alabama, and she is named as a party in the Wooten case only in her capacity as Trustee under the Deed of Trust, Security

---

[8] *Id.* ¶ 3.
[9] *Id.* ¶ 4.
[10] *Id.* ¶ 5.
[11] *Id.* ¶ 6.
[12] *Id.* ¶ 7.
[13] *Id.*
[14] *Id.*
[15] *Id.* ¶ 8.
[16] *Id.*

Agreement and Assignment of Rents and Leases recorded in the Orange County Register of Deeds Office at Book 4215, Page 21 for the benefit of Colonial.[17]

B.

The Corbinton Commons Project

[20]     HRA entered into a loan agreement with Colonial on February 7, 2007, by which Colonial was to provide HRA with $14,000,000 in financing under a revolving loan ("Loan Agreement").[18]  The Loan Agreement specified the financing was to be used for the construction of a residential and healthcare facility, commonly referred to as Corbinton Commons ("Project").[19]

[21]     Section 2.01 of the Loan Agreement obligated Colonial to advance up to $4,431,000 for the "land and site work/infrastructure."[20]  The remaining loan amount could be advanced by Colonial on its own initiative or upon HRA's request.[21]

[22]     The Front Street Plaintiffs planned to develop the Project by first completing site work and infrastructure projects before starting vertical construction and selling homes.[22]  Front Street Plaintiffs anticipated having a revenue source from early home sales, which would be used to pay down interest accruing under the Loan Agreement and to secure additional funding for more construction on the Project.[23]

[23]     FS Construction effectively served as general contractor and/or agent to HRA, EYC and/or K&S, with regard to handling the construction for the Project.[24]

---

[17] Wooten Compl. ¶12.
[18] Front Street Compl. ¶ 11.
[19] *Id.* ¶ 10
[20] *Id.* ¶ 13.
[21] *Id.* ¶ 12.
[22] *Id.* ¶ 14.
[23] *Id.*
[24] Wooten Compl. ¶¶ 20-21.

[24]     Wooten contracted with FS Construction to perform site work and infrastructure construction services for the Project, including clearing and grading, erosion control and drainage work, utilities installation, retaining wall construction, curb and gutter installation, paving and sidewalk installation.[25]  The contract price for these services was approximately $5,900,000.[26]  Payments for the work were to be made to Wooten out of the loan proceeds advanced under the Loan Agreement from Colonial to HRA.[27]

[25]     Prior to entering into the contract with FS Construction, Wooten contacted Colonial to seek assurances from Colonial that the loan proceeds would be advanced for the work Wooten had been contracted to perform.[28]  Robert Rowe, a Colonial loan officer, represented to Wooten that the loan proceeds were available and would be distributed as work on the Project progressed.[29]  Wooten sought and received further assurances from HRA, EYC, K&S and/or FS Construction that the loan proceeds distributed by Colonial would be provided to Wooten for the work performed.[30]

[26]     From September 14, 2007, to May 13, 2009, Wooten provided labor and materials to the Project in reliance on the assurances made by Colonial, FS Construction, HRA, EYC and K&S that Wooten would be paid for this work.[31]

[27]     On December 25, 2008, Colonial stopped advancing loan proceeds under the Loan Agreement to HRA for the Project.[32]

---

[25] *Id.* ¶¶ 24, 28, 34, 38.
[26] Front Street Compl. ¶ 20.
[27] *Id.*
[28] Wooten Compl. ¶¶ 26-28.
[29] *Id.* ¶¶ 27-28.
[30] *Id.* ¶ 35.
[31] *Id.* ¶¶ 28, 30, 35.
[32] *Id.* ¶ 34.

[28]    On May 13, 2009, Wooten stopped work on the Project due to non-payment.[33]

[29]    On August 14, 2009, the State of Alabama Banking Department closed Colonial and appointed the FDIC as receiver, thereby invoking application of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").[34]  On the same day, the FDIC, as receiver, transferred a majority of Colonial's assets and liabilities to BB&T pursuant to the PAA entered into between the FDIC and BB&T.[35]  As such, BB&T became the successor-in-interest to Colonial on May 31, 2010, as contemplated in the PAA.[36]

III.

DISCUSSION

[30]    Both Motions seek dismissal on substantially the same grounds, pursuant to Rules 12(b)(1) and 12(b)(6), respectively.

[31]    Bank Defendants first raise a jurisdictional issue under Rule 12(b)(1), contending that under the circumstances of these actions, FIRREA divests the court of subject matter jurisdiction to hear Plaintiffs' Claims.  The court must decide this issue as a threshold matter.  To the extent the court may determine that it has jurisdiction, it then must decide whether certain Plaintiffs have standing to bring certain Claims, and if so, whether Plaintiffs have sufficiently pleaded their Claims to survive a Rule 12(b)(6) motion to dismiss.

---

[33] *Id.* ¶ 35.
[34] *Id.* ¶ 39.
[35] *Id.* ¶ 40.
[36] *Id.* ¶¶ 8, 34.

A.

Bank Defendants' Rule 12(b)(1) Jurisdictional Motions

[32]    A Rule 12(b)(1) motion seeks dismissal of an action for lack of subject matter jurisdiction.  Subject matter jurisdiction enables a court to hear a case and is a prerequisite for a court to exercise judicial authority over a case and controversy.  *Harris v. Pembaur*, 84 N.C. App. 666, 667 (1987).  A federal statute may divest subject matter jurisdiction from a state court that ordinarily would have jurisdiction over the type of claim being brought.  *See Jackson Cnty. v. Swayney*, 319 N.C. 52 (1987) (affirming dismissal for lack of subject matter jurisdiction regarding a suit based on paternity because federal Indian law divested the state trial court of jurisdiction).  It is appropriate for a court to consider and weigh matters outside the pleadings when ruling on a motion to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1).  *Tart v. Walker*, 38 N.C. App. 500, 502 (1978).

[33]    Bank Defendants contend that the court does not have subject matter jurisdiction to hear Plaintiffs' Claims because Plaintiffs have not complied with the administrative requirements set forth in FIRREA before bringing the Claims against Bank Defendants.[37]  Specifically, Bank Defendants contend that Plaintiffs must exhaust all administrative remedies against the FDIC before any court has subject matter jurisdiction to adjudicate the current dispute.[38]

[34]    The parties agree that FIRREA requires all administrative remedies to be exhausted before a court can exercise jurisdiction over a claim against an institution in

---

[37] Front Street Memo 7.
[38] *Id.* 7.

which the FDIC has been appointed receiver.[39] Plaintiffs concede that they have not met the exhaustion requirement set forth in FIRREA prior to bringing their Claims.[40] Despite these concessions, Plaintiffs contend that FIRREA is inapplicable to their Claims and that Plaintiffs do not have to present their Claims to the FDIC or exhaust administrative remedies before bringing the Claims before this court. As support for this contention, Plaintiffs argue that BB&T expressly assumed liability for Plaintiffs' Claims when BB&T and the FDIC entered into the PAA. They contend that by virtue of the language in the PAA, the FDIC transferred liability to BB&T, and in doing so, rendered the exhaustion requirements of FIRREA inapplicable as to those transferred assets and liabilities.[41]

[35] Because there is no dispute that Plaintiffs have not exhausted their administrative remedies before the FDIC prior to bringing the Claims, whether FIRREA applies here is determinative on the issue of subject matter jurisdiction.

1.

Overview of FIRREA

[36] FIRREA was enacted by Congress in 1989 to provide an administrative review process for all claims asserted against a failed institution that is in FDIC receivership. *See* 12 U.S.C. § 1821(d)(5). Pursuant to 12 U.S.C. § 1821(d)(3)-(5), all claims brought against a failed institution must be presented to the FDIC as receiver. The FDIC must then determine whether the claims should be paid or disallowed. Upon timely request, a claimant is entitled to judicial review of the FDIC's final determination

---

[39] Pls. Resp. Brief Opp'n Defs. Mot. Dismiss 9.
[40] *Id.* 9-10.
[41] *Id.* 10.

in the appropriate federal court.  *See* 12 U.S.C. § 1821(d)(6)(A).  Section

1821(d)(13)(D), dealing with limits on judicial review, provides:

> Except as otherwise provided in this subsection, no court
> shall have jurisdiction over--
>
> (i)    any claim or action for payment from, or any action
>        seeking a determination of rights with respect to,
>        the assets of any depository institution for which
>        the [FDIC] has been appointed receiver, including
>        assets which the [FDIC] may acquire from itself as
>        such receiver; or
>
> (ii)   any claim relating to any act or omission of such
>        institution or the [FDIC] as receiver.

[37]    FIRREA divests jurisdiction from all courts to hear claims against the

assets of a failed institution in which the FDIC has been appointed receiver, unless and

until the administrative review process has been exhausted.  *See* 12 U.S.C. §

1821(d)(13); *see also Carlyle Towers Condo. Ass'n, Inc. v. FDIC*, 170 F.3d 301, 307 (2d

Cir. 1999) ("[S]ection 1821(d)(13)(D), when read in conjunction with the rest of section

1821(d), creates a requirement that all claims be presented to the FDIC before a

claimant may seek judicial review.").[42]  Consequently, it is well settled, by both case law

and the plain language of the statute, that a court does not have subject matter

jurisdiction to hear a claim against the assets of a failed institution for which the FDIC is

receiver.

[38]    However, FIRREA is silent, and case law is largely unsettled, on whether

FIRREA's exhaustion requirement must be satisfied before a party can bring an action

against an entity that purchases assets and liabilities of a failed institution from the

---

[42] Once a party has exhausted its administrative remedies before the FDIC, the party may seek
administrative review of the FDIC's claim decision or file suit on such claim in either the district court
within which the failed bank's principal place of business was located or the United States District Court
for the District of Columbia.  *See* 12 U.S.C. § 1821(d)(6)(A)(ii).

FDIC.  More specifically, only a handful of federal courts have interpreted the applicability of FIRREA's exhaustion requirement when, as Plaintiffs contend here, a successor bank expressly assumes liabilities of a failed bank from the FDIC under a purchase and assumption agreement, and where the assets and liabilities assumed are the basis for the claim against the successor bank.[43]

[39]    A review of the applicable case law and authority indicates that this question presents an issue of first impression for North Carolina courts.[44]

2.

Applicability of FIRREA to Plaintiffs' Claims

[40]    In their arguments, Bank Defendants direct the court to case law from other jurisdictions that requires a party to exhaust its administrative remedies, regardless of the existence of a purchase and assumption agreement, before a court has subject matter jurisdiction to hear the dispute.  *See Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999); *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-47 (E.D.N.Y. 2010).  While these cases hold that FIRREA divests all courts of subject matter jurisdiction, they do not fully address the effect of a transfer of liability pursuant to a purchase and assumption agreement.

[41]    In *Aber-Shukofsky*, the plaintiffs were former employees of a failed bank that was under FDIC receivership.  Plaintiffs contended they had viable wage and hour

---

[43] Case law from federal courts can be used by the court to guide its analysis and decision.  *See McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 488 n.14 (2009) ("Although not binding on North Carolina's courts, the holdings and underlying rationale of lower federal courts may be considered persuasive authority in interpreting a federal statute.").
[44] Neither party has presented the court with authority from North Carolina, either binding or persuasive.  The court is not aware of any North Carolina authority on point.

claims arising from their employment with the failed bank. 755 F. Supp. 2d at 444.

Certain assets of the failed bank were sold by the FDIC to a successor bank. *Id.* The

plaintiffs were attempting to bring their wage and labor law claims against the successor

bank without first exhausting their administrative remedies against the FDIC. *Id.* at 445.

The plaintiffs did not contend that the successor bank had expressly assumed the

liabilities at issue in the case. Rather, they contended that FIRREA did not bar their

claims due to the fact that the successor bank had assumed some of the assets and

liabilities from the failed bank. *Id.* at 446. The court held that it did not have subject

matter jurisdiction over the claims because the plaintiff's claims "relate to acts and

omissions of [the failed bank] under FIRREA" and that 12 U.S.C. § 1821(d)(13)(D)(ii)

divested a court of jurisdiction before a party had exhausted its administrative remedies

against the FDIC. *Id.* at 446. However, even though the successor bank contractually

assumed some of the failed bank's assets and liabilities, the successor bank did not

expressly assume the specific liabilities upon which the plaintiffs were attempting to

sue.[45] *See id.* at 447. Therefore, the court in that case dismissed the plaintiffs' claims

for failing to exhaust its administrative remedies against the FDIC.

[42]     Similarly, in *Village of Oakwood*, the Sixth Circuit Court of Appeals

affirmed the district court's dismissal of the plaintiff's claims on jurisdictional grounds

pursuant to FIRREA because the plaintiff's complaint, although only naming the

successor bank as a defendant, alleged that the FDIC, and not the successor bank, had

breached its fiduciary duties towards the plaintiff. 539 F.3d at 376. The court held that

the plaintiffs could not indirectly attack the FDIC by alleging a claim against the

---

[45] Because the plaintiffs did not allege that the successor bank had expressly assumed the liabilities upon which the claims were based, the court in *Aber-Shukofsky* did not have to address what effect an express assumption of liability by a successor bank would have had on FIRREA and its requirements.

successor bank without first exhausting its administrative remedies against the FDIC. *Id.* at 386.

[43]    Bank Defendants also cite *Frazier v. Colonial Bank*, No. 2:10cv287-MHT, 2011 U.S. Dist. LEXIS 22630 (M.D. Ala. Feb. 16, 2011), for the proposition that the existence of a purchase and assumption has no effect on the applicability of FIRREA.[46] The plaintiff, a former Colonial employee, brought her employment-related claims against Colonial, BB&T (as successor to Colonial) and the FDIC (as receiver for Colonial).  The plaintiff alleged that during her employment with Colonial, from March 2007 through April 2009, she was subjected to a hostile work environment including retaliation and discrimination.  *Id.* at *3.

[44]    Pursuant to Rule 12(b)(6), BB&T moved to dismiss the plaintiff's claims alleged against it, arguing that while BB&T had assumed some of Colonial's assets and liabilities from the FDIC pursuant to a purchase and assumption agreement, BB&T had not assumed liability for employment-related claims that occurred prior to August 14, 2009.  *Id.* at *2-3.  The plaintiff did not challenge BB&T's assertion that the purchase and assumption agreement did not transfer liability to BB&T for the plaintiff's claims.  *Id.* at *3.  The court, however, dismissed plaintiff's claims under Rule 12(b)(1) because it concluded that it did not have subject matter jurisdiction, and indicated that it would not have had subject matter jurisdiction even if plaintiff had shown that BB&T had assumed liability under the purchase and assumption agreement.  *Id.* at *4.

[45]    The court does not find the decision in *Frazier* to be any more persuasive or controlling in regard to the present case than other authority cited by both parties in

---

[46] The court in *Frazier* interpreted the same purchase and assumption agreement executed by BB&T and the FDIC that is at issue in this case.

their briefs. In *Frazier*, all parties conceded that the purchase and assumption agreement did not transfer Colonial's employment liability to BB&T. Additionally, in dismissing the plaintiff's on jurisdictional grounds the court relied on cases that this court does not find to be persuasive and which do not contemplate the issues raised in the instant case. In light of those circumstances, the persuasive value of *Frazier* is limited.

[46]   Several courts have reviewed the specific language of the particular purchase and assumption agreement entered into between the FDIC and a successor bank to determine whether the successor bank assumed liability for acts committed by the failed bank. *See Fernandes v. JPMorgan Chase Bank, N.A.*, 818 F. Supp. 2d 1086 (N.D. Ill. 2011); *Caires v. JP Morgan Chase Bank*, 745 F. Supp. 2d 40 (D. Conn. 2010); *Rundgren v. Washington Mut. Bank, F.A.*, No. 09-00495, 2010 U.S. Dist. LEXIS 126803 (D. Haw. Nov. 30, 2010); *Moldenhauer v. FDIC*, No. 2:09-CV-00756 TS, 2010 U.S. Dist. LEXIS 25315 (D. Utah Mar. 18, 2010). In the instant case, the court finds the analysis and reasoning of those decisions to be persuasive.

[47]   In *Caires*, the court noted that FIRREA is silent as to whether a plaintiff must exhaust its administrative remedies against the FDIC prior to filing a claim against a successor-in-interest to a failed bank that has expressly assumed the liability from the failed bank which gives rise to the claim. 745 F. Supp. 2d at 47. The court noted that the FDIC's power to transfer liabilities to a successor bank does not automatically mean "that [a successor bank] would necessarily benefit from a jurisdictional bar that [C]ongress reserved for a special entity such as the FDIC." *Id.* at 48. Following principles of statutory construction, the court held that a successor bank does not automatically benefit from FIRREA's claim exhaustion process, and that a court should

look to the purchase and assumption agreement to determine which assets and liabilities have been transferred to the successor bank. Those transferred assets and liabilities fall outside the scope of FIRREA and its claim exhaustion requirement. *Id.* at 49. It is only those assets and liabilities not transferred, which remain with the FDIC and are subject to FIRREA's claim exhaustion requirement. *Id.*

[48] The court in *Rundgren* examined and adopted the reasoning set forth by the court in *Caires*. 2010 U.S. Dist. LEXIS 126803, at *13. Faced with an analogous set of facts, the court in *Rundgren* dismissed, for lack of subject matter jurisdiction, the plaintiffs' claims against the successor bank where the claims against the successor bank were premised on the conduct of the failed bank. *Id.* at *12-13. However, in reaching this decision, the court looked to the purchase and assumption agreement to determine whether the FDIC had transferred the specific liability on which the plaintiffs' claims were based. *Id.* at *12. The court dismissed the plaintiffs' claims only after concluding that the FDIC did not transfer liability to the successor bank. *Id.*

[49] In *Moldenhauer*, the court dismissed the plaintiff's claims brought against the successor bank, which were based on the actions and conduct of the failed bank. However, the claims were dismissed only after the court reviewed the language of the purchase and assumption agreement to determine which assets and corresponding liabilities the successor bank had assumed. 2010 U.S. Dist. LEXIS 25315, *6-7. The court dismissed the claims after deciding that the successor bank "did not assume the liability for which Plaintiffs seek to recover." *Id.* at *7. *Moldenhauer* and *Rundgren* are noteworthy for the fact that those courts reviewed the purchase and assumption agreement to determine which liabilities were assumed by the successor bank before

dismissing the cases. *See also Federici v. Monroy*, No. 09-4025, 2010 U.S. Dist. LEXIS 37736, *3 (N.D. Cal. Apr. 6, 2010); *Jones-Boyle v. Washington Mut. Bank, FA*, No. CV 08-02142 JF (PVT), 2010 U.S. Dist. LEXIS 78208 (N.D. Cal. July 8, 2010).

[50]    Here, the court is persuaded to follow the rationale of those cases in which other courts reviewed the purchase and assumption agreement between the FDIC and the successor bank to determine which assets and corresponding liabilities were assumed.  Those assets and liabilities that have been expressly assumed shall not be subject to FIRREA or its exhaustion requirements, and the court will have subject matter jurisdiction over those claims relating to those assets and liabilities.  However, the FDIC retains all liability for those assets and liabilities not assumed.  Any claim relating the retained assets and liabilities must be brought before the FDIC, subject to the exhaustion requirements of FIRREA.

[51]    Furthermore, FIRREA is not a jurisdictional bar for claims brought against the successor bank for its own actions after assuming a failed bank's assets and liabilities from the FDIC.  The court is persuaded by *American National Insurance Company v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011), in reaching this conclusion.  In *American National*,[47] the successor bank assumed substantially all of a failed bank's assets, including its remaining valuable assets, from the FDIC.  *Id.* at 1139.  The successor bank did not assume liabilities or obligations relating to the failed bank's unsecured debt holders or litigation risks.  *Id.*  As a result of the FDIC's sale of the failed

---

[47] Bank Defendants cite to the district court decision in *American National*, 705 F. Supp. 2d 17 (D.D.C. 2010), to support their argument that FIRREA stands as an absolute jurisdictional bar to all of Plaintiffs' Claims.  Defs. Supplemental Mem. Law Supp. Mot. Dismiss 6 (citing to the district court decision in *American National* for the holding that "plaintiffs' claims against a successor bank must be submitted to FIRREA's claims process, without considering the language of any assumption and purchase agreement.").  However, the D.C. Circuit Court of Appeals reversed the district court in *American National*.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011).  The circuit court decision in *American National* is discussed more fully, *infra*.

bank's remaining valuable assets to the successor bank, the failed bank could not meet its obligations to plaintiffs, who were bondholders in the failed bank. *Id.* The failed bank subsequently defaulted on these obligations, causing harm to the plaintiffs. *Id.* The plaintiffs brought suit against the successor bank for the losses plaintiffs suffered as a result of the assumption.

[52]    The D.C. Circuit Court of Appeals in *American National* held that FIRREA did not divest subject matter jurisdiction from the district court to hear the plaintiffs' claims. *Id.* at 1142. The circuit court held that 12 U.S.C. § 1821(d)(13)(D)(ii) barred "only claims that relate to an act or omission of the failed bank of the FDIC-as-receiver, and [plaintiffs'] suit is simply not a 'claim' under FIRREA." *Id.* at 1142. As part of its analysis, the circuit court stated that the word "claim," as used in FIRREA, "refers only to claims that are resolvable through the FIRREA administrative process, and the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is receiver." *Id.* Accordingly, the court held that plaintiffs' claims were not barred by subsection (ii) because the claims were not against the failed depository bank under FDIC receivership, but rather were against the successor bank for its own conduct. *Id.* The court also held that 12 U.S.C. § 1821(d)(13)(D)(i) did not bar plaintiffs' claims because plaintiffs sought relief from the successor bank for its own conduct. *Id.* It held that FIRREA does not bar plaintiffs' claims by "the mere fact that [the successor bank] now owns assets that [the failed bank] once owned . . . ." *Id.*

[53]    Based upon the foregoing analysis, the court concludes that in determining whether it has jurisdiction to proceed, it must consider the PAA FDIC and BB&T entered into with regard to any assumption by BB&T of Colonial's liabilities.

3.

### Front Street Claims Two, Three, Four and Five and Wooten Claims One, Two and Three

[54]    In this case, the court has reviewed section 2.1 of the PAA, which categorically lists Colonial's liabilities assumed by BB&T.  The court has examined this section to determine whether BB&T expressly assumed the liability that serves as the basis for Plaintiffs' tort-based Claims.  These tort-based Claims include Front Street Claims Two, Three, Four and Five and Wooten Claims One, Two and Three.[48]

[55]    Section 2.1(m) expressly states that BB&T assumed ". . . all Asset-related defensive litigation liabilities, *but only to the extent such liabilities relate to assets subject to a shared-loss agreement* . . . ."[49]  Plaintiffs contend that this section is evidence that BB&T expressly assumed liability for their tort-based Claims under the PAA.[50]  However, Plaintiffs do not allege that the "asset-related defensive litigation liabilities" at issue in this case are in fact subject to a shared-loss agreement.

[56]    The failure to allege that the assets at issue in this case are subject to a shared-loss agreement is not itself necessarily fatal to Plaintiffs' tort-based Claims.  As stated earlier, the court may look beyond the pleadings when deciding a Rule 12(b)(1)

---

[48] Front Street Claim Five is based on unfair and deceptive trade practices and is pleaded against BB&T directly and as successor-in-interest to Colonial.

[49] PAA 10 (emphasis added).

[50] Plaintiffs' arguments do not undertake to discuss what constitutes "[a]sset-related defensive litigation liabilities."  Further, Plaintiffs have not explained how their tort-based Claims that relate to the Loan Agreement can be characterized as an "asset-related defensive litigation liability."

motion. However, after reviewing the Shared-Loss Agreement,[51] the court is unable to determine that the asset at issue here (the Loan Agreement) is an asset subject to the Shared-Loss Agreement. Because the court cannot determine that the Loan Agreement is subject to the Shared-Loss Agreement, the court is consequently unable determine whether any litigation liabilities relating to the Loan Agreement were assumed by BB&T. It bears repeating that Plaintiffs neither allege nor argue that the Loan Agreement is subject to the Shared-Loss Agreement.[52] Plaintiffs have the burden of establishing that all elements of standing have been met when seeking to invoke the court's jurisdiction. *Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 92 (2005). In light of the foregoing, the court is forced to conclude that Plaintiffs have not carried their burden of showing that the asset giving rise to Plaintiffs' tort-based Claims is subject to the Shared-Loss Agreement. As such, the court cannot conclude that BB&T expressly assumed liability for Plaintiffs' tort-based Claims.

[57]    All assets and corresponding liabilities not expressly assumed by a successor bank remain with the FDIC. Moreover, any Claim in this action based upon these retained assets and liabilities are subject to FIRREA's provisions, including the requirement that all administrative remedies must be exhausted with the FDIC before a court has subject matter jurisdiction to hear the claim.

[58]    Plaintiffs have not exhausted their administrative remedies with the FDIC as to their tort-based Claims. All those Claims, with the exception of Front Street Claim

---

[51] Contemporaneously with the execution of the PAA, BB&T and the FDIC entered into a Commercial Shared-Loss Agreement ("Shared-Loss Agreement"). The Shared-Loss Agreement contemplates reimbursement by the FDIC to BB&T for loss sharing expenses incurred by BB&T on certain loans and other assets assumed by BB&T. *See* PAA 95, Ex. 4.15B.

[52] Plaintiffs do argue that their Claims are "asset-related defensive litigation liabilities." This argument, standing alone, is not enough to plead that BB&T assumed liability without also alleging and showing that asset in question is subject to a Shared-Loss Agreement.

Five, which is pleaded against BB&T directly, are subject to FIRREA's exhaustion requirement. Claim Five, based on BB&T's own alleged conduct since assuming Colonial's liability from the FDIC, is not subject to FIRREA's exhaustion requirement.[53]

[59] Accordingly, other than Front Street Claim Five as pleaded against BB&T directly, the court CONCLUDES it does not have subject matter jurisdiction as to Front Street Claims Two, Three, Four and Five (as pleaded against BB&T as successor-in-interest to Colonial) and Wooten Claims One, Two and Three; said Claims therefore should be DISMISSED.

4.

Front Street Claim One

[60] Front Street Claim One alleges breach of contract against BB&T directly and as Colonial's successor-in-interest. Section 2.1(i) of the PAA, setting forth the "Liabilities Assumed by Assuming Bank," reflects that BB&T expressly assumed "liabilities, if any, for Commitments."[54] The PAA defines the term "Commitment" as, "the unfunded portion of a line of credit or other commitment of [Colonial] to make an extension of credit . . . that was legally binding on [Colonial] as of Bank Closing . . . ."[55]

[61] The State of Alabama Banking Department closed Colonial on August 14, 2009. The Front Street Complaint alleges that, as of that date, Colonial had advanced only $3,458,000 of the $4,431,000 Colonial was obligated to advance to HRA for site

---

[53] Guided by the analysis and reasoning in *American National*, discussed *supra*, the court determines that claims against BB&T for its own conduct should not be dismissed based on a lack of subject matter jurisdiction for failing to comply with FIRREA's exhaustion requirements. FIRREA does not apply when bringing a claim against a successor bank for its own conduct, even if the successor bank holds certain assets and liabilities of a failed bank in which the FDIC was appointed as receiver. *See Am. Nat'l*, 642 F.3d at 1142.

[54] PAA 9.

[55] *Id.* 3.

work and infrastructure costs pursuant to the Loan Agreement.[56]  The Front Street

Complaint also alleges that through a series of oral modifications, Colonial agreed to

advance to HRA $5,912,505 for work performed by Wooten for site work and

infrastructure.[57]  The Front Street Complaint further alleges that BB&T, by its own

conduct, breached the Loan Agreement by failing to fund the Project after assuming

liability under the PAA for the Loan Agreement.[58]

[62]    Upon entering into the PAA, BB&T expressly assumed liability from the

FDIC for commitments that Colonial owed as of the date it was closed.  The unfunded

amount owed to HRA under the Loan Agreement appears to fall within the purview of

the PAA's definition of a Commitment, which was expressly assumed by BB&T.[59]  As

previously mentioned, this court follows those cases holding that FIRREA's jurisdictional

limitations do not apply to claims related to liabilities that a successor bank expressly

has assumed from the FDIC.  Accordingly, the court CONCLUDES that FIRREA's

exhaustion requirements are not applicable and do not create a jurisdictional bar to

Front Street Claim One.

[63]    Bank Defendants further contend that, except for HRA, Plaintiffs do not

have personal standing to sue on the Loan Agreement.[60]  This is a jurisdictional

argument.  A party must have personal standing in the action prior to a court invoking its

jurisdiction in adjudicating an alleged civil dispute.  *Aubin v. Susi*, 149 N.C. App. 320,

324 (2002); *see also Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C.

---

[56] Front Street Compl. ¶ 13.
[57] *Id.* ¶¶ 17, 18-32.
[58] *Id.* ¶ 43.
[59] Whether and to what extent the Commitment was legally binding on Colonial on the date Colonial was closed by the State of Alabama Banking Department presents a mixed question of fact and law to be determined at a later stage in this civil action.
[60] Front Street Memo 13.

App. 175, 176 (2005) ("If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim.").

[64]   Before addressing the issue of personal standing, the court must determine what state law to apply in deciding issues related to the Loan Agreement. The Loan Agreement contains a choice of law provision, which provides that the Loan Agreement shall be construed and governed by the laws of the State of Alabama. "[W]here parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262 (1980). Thus, the Loan Agreement, and the issue of which parties have personal standing to enforce the Loan Agreement, should be decided applying Alabama law.[61]

[65]   "It is well-settled law that 'one not a party to, or in privity with a contract, cannot sue for its breach.'" *Dunning v. New Eng. Life Ins. Co.*, 890 So. 2d 92, 97 (Ala. 2003) (citing *Twine v. Liberty Nat'l Life Ins. Co.*, 311 So. 2d 299, 305 (Ala. 1975)). The face of the Loan Agreement reveals that the only parties to that agreement are HRA and Colonial. FS Construction, EYC, K&S, Ellis Coleman and Natalie Coleman are not parties to the Loan Agreement, and thus, are at best, third-party beneficiaries to the contract.

[66]   To have standing to sue to enforce a contract as a third-party beneficiary, a party "must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental benefit upon the third party."

---

[61] Front Street Plaintiffs contend that the choice of law provision in the Loan Agreement is void under G.S. 22B-2, which states that choice of law provisions in contracts to improve real property are against public policy. However, the Loan Agreement is not a contract to improve real property. Thus, G.S. 22B-2 does not apply in this case.

*Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.*, 619 So. 2d 1328, 1329 (Ala. 1993); *see also Ramsey v. Taylor*, 567 So. 2d 1325, 1327 (Ala. 1990) ("If the benefit to the third person is not intended to be a direct benefit but rather to be merely an incidental benefit, the third person is not entitled to recover under a third-party beneficiary theory.").

[67]     FS Construction, EYC, K&S, Ellis Coleman and Natalie Coleman cannot enforce the Loan Agreement as third-party beneficiaries.  The Front Street Complaint alleges that Colonial, at the time the Loan Agreement was executed, understood that a portion of the loan proceeds would be used for site work and infrastructure costs.[62]  The Loan Agreement does not mention any specific beneficiaries of the loan proceeds advanced by Colonial.  Further, the Front Street Complaint does not allege that Colonial intended to benefit any specific party at the time the Loan Agreement was executed.[63]  Therefore, except for HRA, the Plaintiffs' allegations are not sufficient to support a contention that they were intended third-party beneficiaries of the Loan Agreement.[64]  Pursuant to Alabama law, only HRA has the right to bring suit for an alleged breach of the Loan Agreement.

[68]     Accordingly, the court CONCLUDES that only HRA has standing to bring Front Street Claim One alleging breach of contract.  Plaintiffs FS Construction, EYC, K&S, Ellis Coleman and Natalie Coleman do not have standing to bring Front Street

---

[62] Front Street Compl. ¶ 11.
[63] *Id.* ¶¶ 11-13.
[64] The Front Street Complaint does allege that subsequent to the execution of the Loan Agreement, representatives of Colonial agreed to advance funds to FS Construction and/or Wooten for site work and infrastructure improvements to the Project. *Id.* ¶¶ 17-24.  However, as discussed below, the alleged oral representations made by Colonial's representatives did not create an enforceable contract nor did they constitute an enforceable oral modification to the Loan Agreement.  Thus, FS Construction (and EYC, K&S, Ellis Coleman and Natalie Coleman) cannot rely on the alleged oral representations to establish themselves as intended third-party beneficiaries to the Loan Agreement.  *See Weathers Auto Glass,* 619 So. 2d at 1329 (stating that a third-party beneficiary must show that the parties to a contract intended to benefit the third-party beneficiary at the time the time the contract was entered into).

Claim One, and as to them the court does not have jurisdiction. To the extent Front Street Claim One is alleged by FS Construction, EYC, K&S, Ellis Coleman and Natalie Coleman, it should be DISMISSED.

B.

Bank Defendants' Rule 12(b)(6) Motions

[69]     Bank Defendants contend that even if the court concludes that it has subject matter jurisdiction to hear Plaintiffs' Claims, any remaining Claims must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). Based upon the foregoing rulings in this Opinion and Order, Plaintiffs' remaining Claims are: (a) Front Street Claim One, as alleged by HRA; (b) Front Street Claim Five, as alleged against BB&T directly and (c) Wooten Claim Four.

[70]     A motion to dismiss pursuant to Rule 12(b)(6) seeks dismissal when the complaint fails to state a claim upon which relief can be granted. For the purpose of deciding a Rule 12(b)(6) motion, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of facts are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98 (1970). The allegations set forth in the complaint are to be treated in a light most favorable to the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986).

[71]     A Rule 12(b)(6) motion should be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). A Rule 12(b)(6) motion that seeks to dismiss a claim on the basis

of an affirmative defense will only be granted "[i]f the complaint discloses an unconditional affirmative defense which defeats the claim asserted . . . ." *Sutton*, 277 N.C. at 102. Documents that are attached to the complaint as exhibits and referenced therein may be considered by the court for Rule 12(b)(6) purposes. *Woolard v. Davenport*, 166 N.C. App. 129, 133-34 (2004).

1.

Front Street Claim One

[72] To state a valid claim for breach of contract under Alabama law, a complainant must allege "'[(1)] the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (quoting *Prince v. Poole*, 935 So. 2d 431, 442-43 (Ala. 2006)).

[73] In Front Street Claim One, HRA alleges that the Loan Agreement entered into between HRA and Colonial was a binding and enforceable contract.[65] The Loan Agreement obligated Colonial (and BB&T as a result of the assumption under the PAA) to advance funds for site work and infrastructure costs for the Project.[66] HRA further alleges that it has performed all of its obligations and conditions precedent in the Loan Agreement, and that Colonial (and BB&T) breached the Loan Agreement by only advancing $3,458,000 of the $4,431,000 promised for site work and infrastructure costs.[67] It is further alleged that BB&T, as successor-in-interest to Colonial, not only is liable for Colonial's breach of the Loan Agreement, but also is liable for its own breach of the Loan Agreement for failing to resume site work funding for additional amounts, up

---

[65] Front Street Compl. ¶ 41.
[66] *Id.*
[67] *Id.* ¶ 43.

to a total of $5,912,505, after assuming liability under the PAA.[68]  The court

CONCLUDES that HRA has sufficiently pleaded a claim for breach of contract against

BB&T under the Loan Agreement.

[74]    Nonetheless, BB&T's liability under the Loan Agreement cannot exceed

$4,431,000, the written amount contemplated in the Loan Agreement.  Alabama's

Statute of Frauds provides that an agreement or commitment "to lend money . . . or to

modify the provisions of such an agreement or commitment except for consumer loans

with a principal amount financed less than $25,000" is void unless such agreement is in

writing and signed by the party to be charged.  Ala. Code § 8-9-2.  "The general rule in

Alabama is that any contract required by the Statute of Frauds to be in writing cannot be

modified by subsequent oral agreement."  *Charles J. Arndt, Inc. v. City of Birmingham*,

547 So. 2d 397, 401 (Ala. 1989) (citing *Cammorata v. Woodruff*, 445 So. 2d 867 (Ala.

1983)).

[75]    Here, the Loan Agreement, as the name of the document and provisions

suggest, is an agreement to lend money.  Therefore, the Loan Agreement, and any

subsequent modifications made to it, must be in writing and signed by the party to be

charged to comply with the Alabama Statute of Frauds.  Whether HRA alleges that

Colonial agreed to advance $5,912,505 for site work pursuant to an oral modification of

the written Loan Agreement, or pursuant to a newly formed oral contract, either such

agreement would be, and is, void under Alabama law for failing to comply with the

Statute of Frauds.

---

[68] *Id.* ¶¶ 42-43.

[76] Further, Section 7.06 of the Loan Agreement,[69] dealing with "Modification, etc." provides that "[n]o modification, amendment or waiver of any provision of this Agreement . . . shall be effective unless the same be in writing and signed by the Lender . . . ." The court finds this "no modification" provision to be clear and unambiguous. The court is bound by Alabama contract principles that state, "[W]hen an instrument is unambiguous its construction and legal effect will be based upon what is found within its four corners." *Southland Quality Homes, Inc. v. Williams*, 781 So. 2d 949, 953 (Ala. 2000) (quoting *Austin v. Cox*, 523 So. 2d 376, 379 (Ala. 1988)).

[77] The parties executed the Loan Agreement in the early part of 2007. It clearly provided that to be effective, any modification or amendment to the Loan Agreement was required to be in writing and signed by Colonial. The alleged modifications to the Loan Agreement made subsequent to its execution were either oral communications or written communications that were neither signed by Colonial nor otherwise constituted valid and enforceable contracts.[70] Therefore, all such alleged modifications to the Loan Agreement are not enforceable and did not change the terms of the written contract.

[78] Accordingly, because the alleged oral modifications to the Loan Agreement do not comply with Alabama's Statute of Frauds or the Loan Agreement's

---

[69] The court's review of the Loan Agreement is proper, even on a Rule 12(b)(6) motion, because the Front Street Plaintiffs attached and incorporated the Loan Agreement as Exhibit 1 to the Front Street Complaint. *Id.* ¶ 12, Ex. 1. *See Woolard*, 166 N.C. App. at 133-34.

[70] The Front Street Plaintiffs allege that "all of [Front Street] Plaintiffs' requests for advances, which were paid by Colonial without objection, specifically stated that the original contract sum of [Wooten's] contract was $5,912,505. Colonial's promises of continued advances . . . were consistent with the terms of the [L]oan [A]greement as there was no prohibition on advances in excess of $4,431,000." Front Street Compl. ¶ 26. This allegation appears to be in direct conflict with other provisions of the Loan Agreement. Specifically, section 2.02(B)(i) states that "[Colonial] shall have no obligation to make any Advance which causes the aggregate Advances for the land and site work/infrastructure costs of the Project to exceed 4,431,000." The court concludes therefore that advances in excess of $4,431,000 were prohibited by the terms of the Loan Agreement, absent a written modification signed by the Lender.

"no modification" provision, the court CONCLUDES that HRA cannot recover damages for breach of contract against BB&T in excess of the amount contemplated in the written Loan Agreement. Front Street Claim One should be DISMISSED to the extent it alleges breach of contract for amounts based on an oral contract or modification.

2.

Front Street Claim Five

[79]    Bank Defendants argue that Front Street Claim Five, which is stated against BB&T directly, and which alleges unfair and deceptive trade practices under G.S. 75-1.1, *et seq.*, should be dismissed for failing to plead the Claim correctly under Alabama law. Specifically, Bank Defendants contend that Alabama law applies to this Claim and that the Claim does not meet Alabama's pleading requirements for such a Claim.[71] Moreover, Bank Defendants argue that Front Street Claim Five is untimely and should be dismissed for failing to comply with Alabama's statute of limitations for a claim based on deceptive trade practices.

[80]    North Carolina appellate courts have used both the "significant relationship" and *lex loci delicti* ("*lex loci*") tests in determining what state's law applies when resolving Chapter 75 claims. *See Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC 13 ¶¶ 21-26 (N.C. Super. Ct. Mar. 1, 2012) (discussing the split of authority that exists within our appellate courts on the appropriate conflict of laws rule to be applied to Chapter 75 claims). Because North Carolina law applies here under both tests, the court need not determine which test is more appropriate under these circumstances.

---

[71] Front Street Memo 17.

[81]     Front Street Claim Five alleges that BB&T failed to lend money to Wooten under the Loan Agreement in excess of the written amount in the Loan Agreement of $4,431,000, despite being aware that the Loan Agreement allowed for funding to Wooten in excess of the written amount.  Front Street Claim Five further alleges that BB&T refused to lend money to HRA, relying on the alleged "cap" of $4,431,000 in the written Loan Agreement.  Plaintiffs contend such failure and refusal constituted an unfair and deceptive trade practice.[72]

[82]     To establish a prima facie case for unfair and deceptive trade practices under Chapter 75, it must be alleged that the acts in question (a) were in or affecting commerce, (b) were unfair or had the tendency or capacity to deceive and (c) caused the claimant to suffer actual injury as a proximate result of the acts.  *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664 (1995).

[83]     The mere breach of a contract will not constitute a Chapter 75 violation under G.S. 75-1.1.  *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42 (2006); *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367-68 (2000) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992)) ("'[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.'").  The allegation that BB&T has breached the Loan Agreement is insufficient to make a prima

---

[72] The court notes that Front Street Claim Five alleges additional wrongful conduct on the part of Colonial, including allegations of fraud and negligent misrepresentation.  Such allegations, coupled with a breach of contract, are enough to establish a prima facie case for unfair and deceptive trade practices under Chapter 75.  *Allen v. Roberts Constr. Co.*, 138 N.C. App. 557, 569 (2000) (citing *Hardy v. Toler*, 288 N.C. 303, 309 (1975)).  However, as previously discussed by the court, Colonial's actions that occurred prior to BB&T assuming certain assets and liabilities from the FDIC are not attributable to BB&T as part of this action.  Accordingly, the court does not consider Colonial's actions in deciding whether Plaintiffs have sufficiently stated a Chapter 75 claim for unfair and deceptive trade practices against BB&T.

facie showing that BB&T has engaged in unfair and deceptive trade practices. A claim for unfair and deceptive trade practices based on a breach of contract requires the Front Street Plaintiffs to allege other aggravating circumstances attendant to the breach, which Front Street Plaintiffs have failed to do here. The court CONCLUDES that Front Street Claim Five fails to state a claim for unfair and deceptive trade practices against BB&T upon which relief can be granted, and said Claim should be DISMISSED.

3.

Wooten Claim Four

[84]     Wooten, in its Complaint, alleges a claim against BB&T and Colonial for an equitable lien on the undispersed construction funds now held by BB&T. In *Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487 (1992), the North Carolina Supreme Court addressed the availability of an equitable lien on funds as asserted by the general contractor of a project against the lender when the owner of the project, with whom the general contractor contracted, was insolvent. The court held that "[t]he court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff . . . ." *Embree*, 330 N.C. at 491. In *Embree*, although the lender and the general contractor were not in privity with each other, the lender had paid the general contractor directly from construction funds for the building project. *Id.* at 489. The general contractor completed the building but was not paid for all of its work. *Id.* The court noted that the general contractor had no adequate remedy at law because its contractor's lien was subordinate to prior encumbrances on the property and the owner of the property was insolvent. *Id.* Consequently, the contractor's lien was worthless. Accordingly, the court held that the general contractor's complaint sufficiently stated a

claim for relief in the form of an equitable lien on the remaining construction funds. *Id.* at 493.

[85] The North Carolina Court of Appeals, interpreting *Embree*, subsequently affirmed a trial court's Rule 12(b)(6) dismissal of a plaintiff's equitable lien claim on the basis that the plaintiff had other available remedies at law it could pursue to adjudicate its claim. *James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 345 (2006). The plaintiff in *James River*, an equipment rental company, had leased equipment to a subcontractor to perform a portion of the grading work for the project. After the subcontractor defaulted on its obligation to pay the plaintiff for the rental equipment, the plaintiff filed a claim for an equitable lien against the owner of the property and the general contractor.

[86] The court of appeals stated that "an equitable lien is available only where a party has no adequate remedy at law." *Id.* (citing *Embree*, 330 N.C. at 491). In addition to its breach of contract claim against the subcontractor, the plaintiff in *James River* had already recovered some funds from the Virginia Treasury for its losses, and also had claims against the guarantor on the contract, the general contractor of the project and the surety that issued a payment bond for the project. *Id.* Because the plaintiff had claims against the party it was in privity with (i.e., the subcontractor), the court affirmed the trial court's dismissal of the plaintiff's equitable lien claim. *Id.*

[87] In the instant case, Wooten has a pending breach of contract claim against FS Construction, the general contractor with whom Wooten is in privity, and claims for unjust enrichment and lien on funds against FS Construction, HRA, EYC and K&S. Unlike the plaintiff's claims in *James River*, it is unclear whether Wooten's claims

against these parties provide an adequate remedy at law.[73]  Therefore, in the limited circumstances of this case, the court cannot CONCLUDE as a matter of law that Wooten has failed to state a claim for an equitable lien on the remaining Project funds.

NOW THEREFORE, based upon the foregoing, it is ORDERED that:

[88]    With regard to Front Street Claims Two, Three, Four and Five, Defendants' Motion to Dismiss All Claims is GRANTED; said Claims are DISMISSED.

[89]    With regard to Front Street Claim One, Defendants' Motion to Dismiss All Claims is GRANTED in part as follows:

[a]    To the extent Front Street Claim One is alleged by Plaintiffs FS Construction, EYC, K&S, Ellis Coleman and Natalie Coleman, said Claim is DISMISSED, as these Plaintiffs do not have standing to assert the Claim.

[b]    To the extent Front Street Claim One seeks to recover based on an oral agreement to lend money or an oral modification to the Loan Agreement, said Claim is DISMISSED.

[90]    To the extent Front Street Claim One is alleged by Plaintiff HRA and seeks to recover based on the written Loan Agreement, Defendants' Motion to Dismiss All Claims is DENIED.

[91]    With regard to Wooten Claims One, Two and Three, Defendants BB&T and Colonial's Motion to Dismiss All Amended Claims is GRANTED; said Claims are DISMISSED.

---

[73] At this stage of the proceeding, it is unclear to the court whether FS Construction, HRA, EYC and K&S are solvent and capable of satisfying any potential future judgment obtained by Wooten against them. Additionally, Wooten contends that its lien rights on the property are subordinate to prior encumbrances on the property and fail to offer any practical value to Wooten in attempting to recover the amounts allegedly owed by BB&T.  Wooten Compl. ¶ 122.

[92]    With regard to Wooten Claim Four, Defendants BB&T and Colonial's Motion to Dismiss All Amended Claims is DENIED.

This the 11th day of May, 2012.