**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KAYSVILLE CITY, a municipal
corporation,

        Plaintiff-Appellant,

v.

FEDERAL DEPOSIT INSURANCE
CORP., in its capacity as receiver for
Barnes Banking Company and in its
corporate capacity,

        Defendant-Appellee.

No. 13-4011
(D.C. No. 1:10-CV-00139-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Kaysville City appeals the district court's denial of its challenge to a decision

by the Federal Deposit Insurance Corporation to deny funds to Kaysville. We

conclude the district court did not err in concluding no insured deposits were

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

available for FDIC insurance.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND

Kaysville entered into agreements with several developers who wished to build subdivisions in the city.  In exchange for Kaysville's approval, the developers created six escrow agreements with Barnes Banking Company ("Barnes"), a state-chartered bank, to guarantee the developers' work.  Under the agreements, Kaysville could draw from funds in the escrow accounts to cover the cost of correcting any defects in the subdivisions.  The agreements required that Kaysville first notify the developer of a defect, demand the developer correct such defect, and then use city resources—if needed—to correct the defect.  Once completed, the city could charge Barnes the costs it incurred in correcting the defect, paid from the relevant escrow account.

Four of the escrow accounts relating to the Old Mill Village Subdivision were putatively funded by Barnes.  The bank extended a revolving line of credit loan, backed by a $1,000,000 promissory note from the Old Mill's developer which was secured by real property.  One escrow account, related to the Apgood Estates Subdivision, was funded by its developer's authorization that Barnes may use money from the developer's savings account to cover any defect costs.  The last escrow account, related to the Stonne Lane Cluster Subdivision, was funded by a straight line of credit, backed by an unsecured promissory note.

- 2 -

In January 2010, Barnes became insolvent and the FDIC was appointed both the receiver for the bank ("FDIC-Receiver") and the insurer of its deposits ("FDIC-Corporate"). A month later, Kaysville filed claims for deposit insurance on the six escrow accounts, in addition to other insurance and receiver claims. Kaysville and the FDIC thereafter debated whether there were deposits in the escrow accounts to qualify for insurance. An FDIC claims agent investigated and eventually denied all of the city's claims in a June 30, 2010, Notice of Disallowance ("Notice"). The escrow account claims, in particular, were denied because the claims agent determined five of the six accounts were not funded with cash. And for all six of the accounts, the agent concluded the city failed to establish entitlement to the funds or incur compensable damages giving rise to a claim under the escrow agreements.

Kaysville filed suit in federal court appealing the decisions contained in the Notice. FDIC-Corporate moved to sever appeal of the escrow account claims from appeal of the receiver claims, which the district court granted. The court then granted judgment to FDIC-Corporate on Kaysville's challenge to the FDIC's refusal of deposit insurance on the six escrow accounts. The court held that the FDIC's denial was not arbitrary and capricious because, on the day Barnes failed, there were no insured deposit accounts—only lines of credit—for five of the six subdivisions and, in any event, Kaysville was not the rightful beneficiary of any of the funds. The district court also denied Kaysville's claim that the FDIC's Notice was not a proper final agency decision supported by an adequate administrative record.

II.    DISCUSSION

This appeal centers on two issues: (1) whether there were insurable deposits in the escrow accounts of which Kaysville was a beneficiary; and (2) whether the FDIC's procedure in denying Kaysville's deposit insurance claims was arbitrary and capricious.

The FDIC's final determination regarding a claim for insurance coverage is a final agency action reviewable in accordance with the Administrative Procedure Act. 12 U.S.C. § 1821(f)(4). A reviewing court must set aside an agency action if it is found to be "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Aviva Life & Annuity Co. v. FDIC*, 654 F.3d 1129, 1131 (10th Cir. 2011) (quoting 5 U.S.C. § 706(2)(A)). Under this standard, review is highly deferential to the agency's decision. *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 451 F.3d 1183, 1188 (10th Cir. 2006) (internal quotation marks omitted). We review the district court's decision regarding an agency action de novo. *Pub. Lands Council v. Babbitt*, 167 F.3d 1287, 1293 (10th Cir. 1999), *aff'd*, 529 U.S. 728 (2000).

A. Escrow Account Deposits

Kaysville contends that the district court misconstrued the facts and misapplied the law by affirming the FDIC's decision to deny the city deposit insurance on the six escrow accounts. Kaysville argues that contrary to the FDIC and district court's findings, Barnes held insurable deposits within the meaning of 12 U.S.C. § 1813(*l*)(1) in the accounts.

- 4 -

Under § 1813(*l*)(1), an insurable deposit is defined as (1) the unpaid balance of money or its equivalent (2) received or held by the bank (3) held in the usual course of business (4) for which it has given or is obligated to give credit, either conditionally or unconditionally. Kaysville asserts the district court incorrectly held that a line of credit is not a loan exhibiting the existence of "money or its equivalent." The FDIC, on the other hand, argues that the Supreme Court's holding in *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 435 (1986), that conditional letters of credit are not "deposits" within the meaning of § 1813(*l*)(1) precludes Kaysville from qualifying for deposit insurance in this case. We agree.

In that case, a buyer, Orion, guaranteed payment to a seller, Philadelphia Gear, by arranging with a bank a standby letter of credit for Philadelphia Gear's benefit. *Philadelphia Gear Corp.*, 476 U.S. at 428. Under the agreement, if Orion failed to make a payment to Philadelphia Gear, Philadelphia Gear could draw on the letter of credit by presenting the bank with Orion's unpaid invoices. *Id.* Orion secured this letter of credit with a promissory note on which the bank could collect only if Philadelphia Gear drew on the letter of credit. *Id.*

The bank failed and Philadelphia Gear sought payment on the letter of credit, which the FDIC denied. *Id.* at 428-29. After the Tenth Circuit held that the standby letter of credit backed by a promissory note fell within the definition of "deposit" under § 1813(*l*)(1), the Supreme Court reversed. *Philadelphia Gear Corp.*, 476 U.S. at 429-30. The Court instead held that standby letters of credit backed by contingent

- 5 -

promissory notes are not the type of "hard assets" constituting "money or its equivalent" contemplated by § 1813(*l*)(1). *Philadelphia Gear Corp*., 476 U.S. at 431-32. The Court reasoned that the FDIC was designed to protect against the loss of hard assets, and financial instruments of this sort involved no surrender of assets to the bank by either company. *Id*. at 435. Thus, in the absence of a presentation of unpaid invoices, neither Philadelphia Gear nor Orion lost anything except the ability to use the bank to reduce Philadelphia Gear's risk that Orion would not pay. *Id*.

Here, Barnes issued a line of credit backed by a promissory note similar to the letter of credit in *Philadelphia Gear*. And neither Kaysville nor the developers surrendered any assets to the bank. Given this precedent, the note here does not represent a hard asset but is instead a contingent liability not constituting "money or its equivalent" under § 1813(*l*)(1).

Kaysville argues that *Philadelphia Gear* applies only to standby letters of credit,[1] and not to lines of credit like those used here. Kaysville does not, however, provide an explanation as to why *Philadelphia Gear*'s rule should not apply to other lines of credit. Indeed, we are not convinced that the lines of credit in this case are materially different from the standby letter of credit in *Philadelphia Gear*. In

---

[1] A standby letter of credit is any letter of credit "or similar arrangement however named or described" where an issuer is obligated to make a payment to a beneficiary "on account of any indebtedness undertaken by the account party." 12 C.F.R. § 337.2(a).

- 6 -

reasoning that a standby letter of credit is merely a contingent liability, the Supreme Court directly compared a standby letter of credit to a line of credit, the very type of instrument used by the developers in this case. *See id.* at 438 (supporting conclusion that standby letters of credit should be excluded from the definition of "deposit" with observation that a standby letter of credit "can be viewed most accurately as the extension of a line of credit by [the bank] to [the customer]"). Moreover, the line of credit used here served the same function as the standby letter of credit in *Philadelphia Gear*—to insure against the transaction going awry. Barnes' line of credit was available only upon a showing that the developers failed to fulfill their obligation to correct known defects in the same way the standby letter of credit was available only if Philadelphia Gear produced Orion's unpaid invoices.

The Supreme Court's conclusion follows from the nature of deposit insurance. Deposit insurance is designed to protect against loss. Congress' purpose in creating the FDIC was "to safeguard the hard earnings of individuals against the possibility that bank failures would deprive them of their savings." *Id.* at 432. The FDIC's historical interpretation of the definition of "deposit" has focused on safeguarding those "hard earnings." *Id.* at 435. In light of this background, the Court concluded the statute did not extend coverage to a letter of credit backed by a contingent promissory note because it involved no *surrender* of assets. Likewise, neither Kaysville nor the developers surrendered assets. Rather, like the claimant in *Philadelphia Gear*, Kaysville seeks to have the FDIC guarantee the contingent lines

of credit, not assets entrusted to the bank. Put simply, Barnes was not in possession of either Kaysville's or the developers' assets when the bank failed.

Nor can Kaysville find relief in the First Circuit's decision in *FDIC v. Fedders Air Conditioning, USA, Inc.*, 35 F.3d 18 (1st Cir. 1994). In that case, a buyer secured a bank's loan for the purchase of a warehouse with an unconditional promissory note. *Id.* at 20. For reasons of convenience, the bank withheld $250,000 of the total purchase price from the seller which the bank was to hold in escrow to insure the seller's promise to make roof repairs. *Id.* at 19-20. The bank signed an escrow agreement acknowledging deposit of the $250,000, but then the bank never set up the escrow accounts. *Id.* at 20. When the bank later failed, the seller sought deposit insurance on the escrow account. *Id.* Under these circumstances, the First Circuit held that despite the absence of the escrow account, there was a "deposit" within the meaning of § 1813(*l*)(1). *Id.* at 22. The court reasoned that, because the buyer gave the bank a note to cover the entire loan, $250,000 of which the bank was obligated to retain in escrow, the equivalent of money was received. *Id.* at 21. The court stated that the transaction would have been no different than if the bank had paid the seller the entire purchase price, and then the seller had given $250,000 right back to the bank to hold in escrow on the buyer's behalf. *Id.*

Thus, in *Fedders*, one party effectively surrendered $250,000 to the bank. Here, on the other hand, neither Kaysville nor the developers surrendered anything to Barnes. Unless Kaysville showed Barnes that it corrected defects in the subdivision

- 8 -

warranting payment under the escrow agreements, the promissory notes were only a contingent promise. As with the parties in *Philadelphia Gear*, when Barnes failed, Kaysville lost only the ability to use Barnes to reduce its risk that the developers would not correct defects. The FDIC did not act arbitrarily or capriciously in denying Kaysville's claims on the grounds that it did not have insurable deposits.

As to Kaysville's contention that it was the rightful owner of the escrow accounts—funded or otherwise—the city ignores the fact that it simply did not make a demand as required by the escrow agreements. Under the agreements, Kaysville could draw on the line of credit (or savings account, as established by the Apgood Estates agreement) only if Kaysville presented a notice of defect, made a demand on the developer to correct it, and then corrected the defect itself. Kaysville provides no evidence it took those requisite steps before Barnes failed.

In sum, Kaysville did not trigger the bank's obligation to pay the city. The district court did not err in its analysis.

B. FDIC's Procedure and Administrative Record

Kaysville additionally contends that the FDIC's determination did not accord with "fair play," Aplt. Br. 28 (internal quotation marks omitted), and was not properly supported by record evidence. The city specifically argues that the Notice letter pertained only to the FDIC's role as receiver, not its role as an insurer in its corporate function. Thus, the city asserts the Notice was not a final agency determination about its deposit insurance claims. Kaysville also contends that

- 9 -

exhibits attached to the administrative record nearly 18 months after the decision—and immediately before litigation—were improper after-the-fact rationalizations.

While it is true the FDIC must consider all relevant factors in its decision and the procedure must accord with fair play, *see Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1583 (10th Cir. 1994), Kaysville has not presented evidence that the process was unfair. Kaysville argues that because FDIC-Receiver and FDIC-Corporate serve separate functions, the June 30 Notice that discussed Kaysville's receiver claims "had nothing to do with [its] insurance" claims. Aplt. Br. at 29. But prior communication between Kaysville and the FDIC refutes that argument. *See* Aplt. App. Vol. V at 570-78 (Kaysville letter setting forth its claim to insured deposits). And more importantly, the Notice itself stated grounds for denial that were pertinent only to the insurance claims. Further, the Notice expressly stated that, relative to a future judicial challenge, different statutory provisions governed the city's claims depending on whether it chose to sue the FDIC in its receiver or corporate capacity. *Id*. at 610. This statement made it clear that the Notice pertained to the FDIC's role as insurer as well as receiver and was thus its final decision denying Kaysville's insurance deposit claims.

Nor does Kaysville identify anything to suggest that the documents in the administrative record were improper or did not adequately support the FDIC's decision. Kaysville takes particular issue with the FDIC agent's declaration created long after the FDIC made its decision. But it is evident that the declaration and

accompanying documents are not post hoc rationalizations, they merely provide context and background. Whatever "conclusions without proper foundation," Aplt. Br. at 29, that the agent allegedly made in the declaration are peripheral and minor. We therefore conclude that the procedure the FDIC employed in deciding Kaysville's insurance deposit claims was not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.

The judgment of the district court is affirmed. Kaysville's Renewed Motion to Supplement the Record is denied. Appellant's Appendix Volume 5 will remain under seal.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge