**SECOND DIVISION**
**BARNES, P. J.,**
**RICKMAN and SELF, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1708. DOUGLAS COUNTY v. HAMILTON STATE BANK.

SELF, Judge.

In May 2014, Douglas County sued Hamilton State Bank ("Hamilton") to recover under a series of performance bonds issued by Hamilton's predecessor, Douglas County Bank. Hamilton moved to dismiss the County's complaint, alleging that the County's action was barred due to its failure to exhaust administrative remedies as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). See 12 USC § 1821 (d) (13) (D); OCGA § 9-11-12 (b) (1). Following a hearing, the State Court of Douglas County granted Hamilton's motion and dismissed the County's action for lack of subject matter jurisdiction. The County appeals and, for the reasons that follow, we affirm.

A motion pursuant to OCGA § 9-11-12 (b) (1) asserts the defense of "lack of jurisdiction over the subject matter. . . ." "When a defendant challenges a plaintiff's standing by bringing a . . . 12 (b) (1) motion, the plaintiff bears the burden to establish that jurisdiction exists." *McCabe v. Daimler AG*, No. 1:12-CV-2494-MHC, 2015 U.S. Dist. LEXIS 182877 (II), *6 (N.D. Ga. 2015).[1] "A motion to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1) can allege either a facial challenge, in which the court accepts as true the allegations on the face of the complaint . . . or a factual challenge, which requires consideration of evidence beyond the face of the complaint. . . ." (Citations, punctuation, and footnote omitted.) *Bobick v. Community & Southern Bank*, 321 Ga. App. 855, 860 (3), n. 4 (743 SE2d 518) (2013).[2] On appeal, we review "de novo a trial court's grant of a motion to dismiss" due to lack of subject matter jurisdiction. Id. at 856. We also "construe the pleadings

---

[1] See, e.g., *Ga. Dept. of Revenue v. Moore*, 328 Ga. App. 350, 352, n. 10 (762 SE2d 184) (2014) (where a Georgia statute is patterned after a federal rule of civil procedure, Georgia court may look to federal cases for guidance in construing Georgia statute).

[2] This case involves a "factual challenge" since the trial court considered "evidence beyond the face of the complaint. . . ." See *Bobick*, 321 Ga. App. at 860 (3), n. 4.

2

in the light most favorable to the nonmoving party with any doubts resolved in that party's favor." Id.

So viewed, the record demonstrates that a Douglas County ordinance required subdivision developers to obtain bonds to protect the County in the event the developers were unable to complete their work. Relevant to this case, two developers – Anneewakee Falls, LLC and Windermere Development, Inc. – secured a series of maintenance and performance bonds[3] from Douglas County Bank in 2011 and 2012, listing the Bank as surety. Some of the bonds were set to expire in August 2012, others in February 2013. Prior to the expiration date of each bond, the County contacted the Bank to demand that work by the developers be completed to satisfy the bonds or that the Bank either issue payment on the bonds or extend the terms of the bonds. It does not appear from the record that the Bank responded to the County.

_____

[3] Specifically, Anneewakee Falls obtained a performance bond for Riverside Ridge Unit 1 ($68,000) and a maintenance bond for the same property ($38,500); a performance bond for Creekview ($73,500); a performance bond for Chaparrall Ridge Unit 3 ($42,750) and a maintenance bond for the same property ($26,220); and a performance bond for Chaparrall Ridge Unit 4 ($75,525) and a maintenance bond for the same property ($44,500). Windermere Development obtained a performance bond for Windermere Unit Two ($165,300) and a maintenance bond for the same property ($145,145).

On April 26, 2013, the Georgia Department of Banking and Finance closed the Bank and named the Federal Deposit Insurance Corporation ("FDIC") as the receiver, which transferred the Bank's assets and liabilities to Hamilton on the same date via a Purchase and Assumption Agreement ("Agreement"). The Agreement defined certain terms, including "Assets," "Credit Documents," and "Loans." In particular, a "Loan" is defined as "all of the following owed to or held by the Failed Bank as of the Bank Closing Date:

> (a) loans . . ., participation agreements, interests in participations, overdrafts of customers . . ., revolving commercial lines of credit, home equity lines of credit, Commitments, United States and/or State-guaranteed student loans and lease financing contracts; [and]

> (b) all Liens, rights (including rights of set-off), remedies, powers, privileges, demands, claims, priorities, equities and benefits owned or held by, or accruing or to accrue to or for the benefit of, the holder of the obligations or instruments referred to in clause (a) above, including but not limited to those arising under or based upon Credit Documents, . . . standby letters of credit, . . . payment bonds and performance bonds at any time. . . ."

Section 2.1 of the Agreement identifies the "Liabilities Assumed by [Hamilton]" and provides that Hamilton "expressly assumes . . . and agrees to pay, perform and

4

discharge[] all of the following liabilities of the Failed Bank . . .: (g) liabilities for any acceptance or commercial letter of credit . . .; [and] (h) liabilities for any 'standby letters of credit' as defined in 12 CFR § 337.2 (a) issued on the behalf of any Obligor of a Loan acquired hereunder by [Hamilton], but excluding any other standby letters of credit. . . ."[4] (Punctuation omitted.) To help offset Hamilton's losses as a result of assuming the Bank's liabilities, the FDIC paid Hamilton approximately $21 million and entered into a loss-sharing agreement in which the FDIC agreed to reimburse Hamilton up to 80% of any losses Hamilton suffered related to the Bank's assets and liabilities.

After the transfer, the County contacted the FDIC concerning the status of the bonds; the FDIC indicated that it would retain four bonds not at issue in this case and that the County should contact Hamilton to determine how Hamilton intended to

---

[4] 12 CFR § 337.2 (a) defines a standby letter of credit as "any letter of credit, *or similar arrangement however named or described*, which represents an obligation to the beneficiary on the part of the issuer: (1) To repay money borrowed by or advanced to or for the account of the account party, or (2) to make payment on account of any indebtedness undertaken by the account party, or (3) *to make payment on account of any default (including any statement of default) by the account party in the performance of an obligation*." (Emphasis supplied.)

proceed on the remaining bonds.[5] In December 2013, the County demanded payment on the bonds from Hamilton; Hamilton refused, asserting that the bonds had expired prior to the transfer from Douglas County Bank and that the bonds "were not a Hamilton liability."

This action followed, and Hamilton moved for summary judgment on the issue of expiration of the bonds. The trial court denied Hamilton's motion in a brief order, finding that genuine issues of material fact precluded summary judgment in Hamilton's favor.[6] Hamilton then filed a motion to dismiss the County's complaint for lack of subject matter jurisdiction, alleging that the County failed to exhaust administrative remedies with the FDIC pursuant to 12 USC § 1821 (d) (13) (D), which provides that

> [e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such

---

[5] The FDIC ultimately disaffirmed each of the four bonds it retained and disallowed the County's proofs of claim concerning the four bonds.

[6] The propriety of the trial court's summary judgment ruling is not before us in this appeal, and we express no opinion concerning the merits of the motion.

receiver; or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

(Punctuation omitted.) The trial court determined that the bonds "at issue were all part of the [Agreement]"; that "[t]he bonds at issue became assets of the FDIC at the time of receivership"; that "[t]hose assets were then sold to [Hamilton]"; and that "the exhaustion of administrative remedies requirement was not met. . . ." As a result, the trial court concluded that its jurisdiction "must cede to the administrative process." See *Bobick*, 321 Ga. App. at 863 (3) ("[I]f a claim . . . falls within 12 USC § 1821 (d) (13) (D), courts are divested of subject matter jurisdiction if the claimant failed to exhaust [its] administrative remedies before the FDIC."). Accordingly, the trial court dismissed the County's action.[7]

1. In its first enumeration of error, the County contends that the trial court erred in determining that the performance bonds first issued by Douglas County Bank were "assets" rather than "liabilities."[8] We agree.

---

[7] Although the trial court's order did not indicate whether its decision was based upon subpart (i) or (ii) of 12 USC § 1821 (d) (13) (D), the trial court's characterization of the performance bonds as "assets" suggests that its decision was based upon subpart (i).

[8] Contrary to Hamilton's argument, we find that the County sufficiently raised this argument in the trial court. As a result, we will consider the County's

Although FIRREA does not include a definition of the term "asset," it may be generally defined as "[a]n item that is owned and has value." Black's Law Dictionary (7th ed. 1999), p. 112. In contrast, a "liability" is "[a] financial or pecuniary obligation; DEBT. . . ." Id. at 925. Of particular relevance to this case, authorities in other jurisdictions have concluded that a performance bond is similar to a standby letter of credit, which is a liability. See, e.g., *Murphy v. Fed. Deposit Ins. Corp.*, 38 F3d 1490, 1500 (9th Cir. 1994) ("A letter of credit is not an asset of the bank[;] [i]t is a liability. A standby letter of credit is a contingent liability."); *Arbest Constr. Co. v. First Nat. Bank & Trust*, 777 F2d 581, 585 (II) (10th Cir. 1985) (standby letter of credit payable "only if the account party fails to pay or perform[;] [t]he standby letter of credit is therefore quite similar to a surety bond."); *Guangzhou Consortium Display Prod. Co. v. PNC Bank*, 924 FSupp.2d 800, 805 (III) (E.D. Ky. 2013) ("A standby letter of credit is a security device, which operates like a surety or performance bond. [. . .] A standby letter of credit is used secondarily in a nonsales transaction 'as a guarantee against default on contractual obligations.'"). Compare *Kaysville City v. Fed. Deposit Ins. Corp.*, 557 Fed. Appx. 719, 722 (II) (A) (10th Cir.

enumeration. Compare *Pinnacle Properties V v. Mainline Supply of Atlanta*, 319 Ga. App. 94, 100 (2) (735 SE2d 166) (2012) ("issues presented for the first time on appeal furnish nothing for us to review").

8

2014) (where neither municipality nor developer surrendered any assets to the bank, note at issue was not a hard asset but a contingent liability under 12 USC § 1813 (l) (1)).

We find the logic of these authorities persuasive and therefore find that, in view of Douglas County Bank's obligation to submit payment to the County in the event of default by the developers, the performance bonds at issue in this case are "liabilities" rather than "assets." Accordingly, we conclude that the trial court erred when it characterized the bonds as "assets."

2. Next, the County argues that the trial court erroneously applied FIRREA's administrative exhaustion requirement. In particular, the County asserts that the exhaustion requirement does not apply to "liabilities" under the plain language of subpart (i) of § 1821 (d) (13) (D) or to the enforcement of liabilities that have been expressly assumed by a successor bank. While we agree that subpart (i) does not apply to the County's claim, we conclude that the County could not proceed on its claims against Hamilton without first exhausting its administrative remedies with the FDIC under the plain language of subpart (ii).

(a) In Division 1, supra, we concluded that the performance bonds issued by Douglas County Bank were "liabilities" rather than "assets." Section 1821 (d) (13)

9

(D) (i) provides that a court will lack jurisdiction as to "any claim or action for payment from [. . .] the assets of any depository institution for which the [FDIC] has been appointed receiver. . . ." Accordingly, under the plain language of the statute,[9] we conclude that the trial court erred in applying subpart (i) to hold that FIRREA's administrative exhaustion requirement barred the County's action against Hamilton to enforce the performance bonds. However, as explained in Division 2 (b), infra, the trial court nevertheless correctly dismissed the County's action for lack of subject matter jurisdiction. See § 1821 (d) (13) (D) (ii).

(b) Next, the County contends that its claims are against Hamilton for *Hamilton's* failure to remit payment under the performance bonds, rather than claims for any acts or omissions attributable to Douglas County Bank prior to its failure. As a result, the County asserts that subpart (ii) of § 1821 (d) (13) (D) does not apply. We do not agree.

> We recently discussed FIRREA's administrative exhaustion provision in *Bobick*. . . . As we explained in *Bobick*, Congress, in enacting FIRREA, established an administrative review process for claims against failed banks for which the FDIC had been appointed as

---

[9] See generally *CPF Investments v. Fulton County Bd. of Assessors*, 330 Ga. App. 744, 746 (769 SE2d 159) (2015) ("if the language of the statute is plain and unambiguous, we simply apply the statute as written").

receiver. [] Furthermore, Congress "anticipated that, as a receiver for failed lending entities, the FDIC would face numerous claims from various parties," and, as a result, "established limits on judicial review of such claims." (Citations and punctuation omitted.)

*Olde Towne Tyrone v. Multibank 2009-1 CRE Venture, LLC*, 326 Ga. App. 322, 325 (1) (756 SE2d 558) (2014). More specifically, Congress enacted § 1821 (d) (13) (D) to divest courts of jurisdiction over specified types of claims and actions. As previously noted, § 1821 (d) (13) (D) (ii) requires administrative exhaustion of "any claim relating to any act or omission of [the failed] institution or the [FDIC] as receiver."

Here, Hamilton correctly notes that the County's complaint alleges that it demanded payment from Douglas County Bank and that Hamilton, as the successor to Douglas County Bank, "assumed liability for the [bonds] [and] is liable to [the County] as obligee on the [bonds]." Moreover, the County asserted in its portion of the parties' consolidated pretrial order that

> *Douglas County Bank as surety had defaulted* on all the bonds by failing either (1) to complete the work in the subdivisions, (2) to pay Douglas County for the completion of the work, or (3) to extend the time to do either option (1) or (2) by delivering new bonds to Douglas County. *The*

11

*County seeks to recover damages on the bonds from [Hamilton] as successor to Douglas County Bank, the surety.*

(Emphasis supplied.) Therefore, the County's pleadings demonstrate that its claims are rooted in the alleged failure of Douglas County Bank to remit payment under the performance bonds following a proper demand for payment. It is well settled that actions taken by a failed bank "before it was closed and placed in receivership . . . are claims relating to an act or omission of an institution for which the FDIC was appointed as receiver." (Citation and punctuation omitted.) *Bobick*, 321 Ga. App. at 863 (3). Such claims "come within the ambit of 12 USC § 1821 (d) (13) (D) and are subject to the administrative exhaustion requirement imposed by FIRREA." Id. It follows that the County's claims were subject to FIRREA's administrative exhaustion requirement, and in light of the County's undisputed failure to comply with that requirement, its claims were correctly dismissed by the trial court for lack of subject matter jurisdiction.[10] See id. at 863 (3), 866 (3) (d); *Gravitt v. Bank of the Ozarks*, 326 Ga. App. 461, 468 (2) (756 SE2d 695) (2014).

---

[10] See, e.g., *Bobick*, 321 Ga. App. at 869-870 (4) (b) (order of dismissal will be affirmed if right for any reason).

12

(c) In possible recognition of the harsh effect of the strict application of § 1821 (d) (13) (D) (ii), the County cites several foreign decisions for the proposition that "liabilities that have been expressly assumed by a successor bank . . . are not subject to FIRREA's administrative exhaustion requirement." See, e.g., *Caires v. JP Morgan Chase Bank*, 745 FSupp.2d 40 (D. Conn. 2010); *Front Street Constr. v. Colonial Bank*, 2012 NCBC 25, 2012 NCBC LEXIS 25 (III) (A) (2) (N.C. Super. 2012).[11] Indeed, "FIRREA is silent, and case law is largely unsettled, on whether FIRREA's exhaustion requirement must be satisfied before a party can bring an action against an entity that purchases assets and liabilities of a failed institution from the FDIC." *Front Street*, 2012 NCBC 25 at *38.

However, the few cases that have faced this issue "have reviewed the specific language of the particular purchase and assumption agreement entered into between the FDIC and a successor bank to determine whether the successor bank assumed liability for acts committed by the failed bank." Id. at *46. In general terms, these

---

[11] See *Rockwell v. Chase Bank*, No. C 10–1602RSL, 2011 U.S. Dist. LEXIS 61279 (W.D. Wash. June 7, 2011); *Rundgren v. Washington Mut. Bank*, No. 09-00495, 2010 U.S. Dist. LEXIS 126803 (D. Haw. Nov. 30, 2010); *Federici v. Monroy*, No. C 09-4025 PVT, 2010 U.S. Dist. LEXIS 45335 (N.D. Cal. 2010); *Moldenhauer v. Fed. Deposit Ins. Corp.*, No. 2:09-CV-00756 TS, 2010 U.S. Dist. LEXIS 25315 (D. Utah Mar. 18, 2010).

authorities reason that, if the FDIC and the successor bank have already reviewed the failed bank's assets and liabilities and have agreed that the successor bank will assume certain liabilities, administrative review is unnecessary – a court will simply look to the purchase and assumption agreement to determine what the successor bank obtained in the transaction. See *Rundgren v. Washington Mut. Bank*, No. 09-00495, 2010 U.S. Dist. LEXIS 126803 (IV) (A), *11-*12 (D. Haw. Nov. 30, 2010); *Caires*, 745 FSupp.2d at 48; *Front Street*, 2012 NCBC 25 at *38 (III) (A) (1), *46-*52 (III) (A) (2). Underlying these authorities' reasoning is the fact that the FDIC's powers as receiver include

> the authority to "transfer any asset or liability of the institution in default . . ." 12 USC § 1821 (d) (2) (G) (i) (II). Accordingly, the FDIC is empowered to determine which assets and liabilities of a failed bank are to be sold and transferred, and which assets it should keep. Such a design facilitates the sale of a failed institution's assets (and thus helps to minimize the government's financial exposure) by allowing the FDIC to absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations. It is this intermediate step, the FDIC's ability to designate specific assets and liabilities for purchase and assumption that reflects a distinction between the FDIC and a subsequent purchaser, and why a subsequent purchaser does not necessarily benefit from the FDIC's claim exhaustion process. Instead a Court should look to the purchase and assumption

14

agreement governing the transfer of assets between the FDIC and a subsequent purchaser of assets of a failed bank to determine which assets and corresponding liabilities are being assumed. Absent a transfer of liability by the FDIC and assumption of liability by a subsequent purchaser, . . . the liability remains with the FDIC and subject to the claim exhaustion procedures.

(Citations and punctuation omitted.) *Caires*, 745 FSupp.2d at 48-49. While none of the foreign authorities cited by the County found that a successor bank expressly assumed a failed bank's liabilities, the authorities' significance is that the courts looked to the terms of the purchase and assumption agreement in making that determination. Neither the County nor Hamilton have cited any Georgia authority, and we have found none, that squarely addresses this issue.

To be sure, the County's argument is not without appeal. In this case, the record reveals that Hamilton expressly assumed the performance bonds in the Agreement. Compare *Caires*, 745 FSupp.2d at 49-50; *Front Street*, 2012 NCBC 25 at *50. Section 2.1 of the Agreement identifies the "Liabilities Assumed by [Hamilton]" and provides that Hamilton "expressly assumes . . . and agrees to pay, perform and discharge[] all of the following liabilities of the Failed Bank . . .: (g) liabilities for any acceptance or commercial letter of credit . . .; [and] (h) liabilities for

15

any 'standby letters of credit' as defined in 12 CFR § 337.2 (a) issued on the behalf of any Obligor of a Loan acquired hereunder by [Hamilton], but excluding any other standby letters of credit. . . ." (Punctuation omitted.) As noted in Division 1, supra, the performance bonds originally issued by Douglas County Bank satisfy the definition of "standby letter[s] of credit" pursuant to 12 CFR § 337.2 (a). Moreover, Hamilton's 30 (b) (6) representative agreed that certain letters of credit, including the ones at issue in this case, were passed on to Hamilton by the FDIC. In addition, the "Obligor[s]" in this case are the developers whose work was addressed by the performance bonds. Finally, the record contains evidence that the performance bonds formed one link of a tripartite relationship[12] between the County, the developers and Douglas County Bank, and that, in the event of default by the developers, letters of credit would be funded "and then the [developers] would be obligated for that amount

---

[12] See generally *Fort Bragg Unified School District v. Colonial American Cas. and Surety Co.*, 194 Cal. App. 4th 891, 910 (II) (B) (Cal. App. 2011) ("a performance bond creates a tripartite relationship between the surety [Douglas County Bank], the principal [the developers], and the obligee [the County][;]" in other words, "the performance bond protects the obligee against the principal's default."). See also *Kaysville City*, 557 Fed. Appx. at 723.

of money."[13] Accordingly, under the plain language of the Agreement, Hamilton expressly assumed the performance bonds.

But regardless of the appeal of the County's argument,[14] and of the seeming absurdity that the County exhaust administrative remedies related to liabilities which the FDIC had already transferred to Hamilton and which Hamilton had already expressly assumed in the Agreement, we conclude that the County's argument is foreclosed by the plain language of § 1821 (d) (13) (D) (ii). Nothing in § 1821 (d)

---

[13] This interpretation is buttressed by the general common law principle that banks cannot act as sureties. See OCGA § 7-1-290 (a) ("a bank shall not lend its credit, bind itself as a surety to indemnify another, or otherwise become a guarantor.").

[14] See *Front Street*, 2012 NCBC 25 at *50:

[A]ssets and liabilities that have been expressly assumed shall not be subject to FIRREA or its exhaustion requirements, and the court will have subject matter jurisdiction over those claims relating to those assets and liabilities. However, the FDIC retains all liability for those assets and liabilities not assumed. Any claim relating to the retained assets and liabilities must be brought before the FDIC, subject to the exhaustion requirements of FIRREA.

See also *Caires*, 745 FSupp.2d at 49-50 (court examined purchase and assumption agreement and concluded successor bank did not assume liabilities of failed bank).

17

(13) (D) (ii) carves out an exception for claims relating to the liabilities of a failed bank that have been assumed by a successor bank under a purchase and assumption agreement with the FDIC as receiver. Rather, the statutory subsection broadly covers, without any words of limitation or restriction, "*any* claim relating to any act or omission" of a failed bank placed in receivership. (Emphasis supplied.) § 1821 (d) (13) (D) (ii). "Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden," and "[i]n the absence of words of limitation, words in a statute should be given their ordinary and everyday meaning." (Citations and punctuation omitted.) *Six Flags Over Georgia II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

As we have emphasized, courts are without authority to engraft exceptions upon a statute "absent statutory language allowing such an exception." *In the Interest of J. H.*, 335 Ga. App. 848, 851 (783 SE2d 367) (2016). In short, it is for Congress, and not this Court, to craft the exception upon which the County seeks to rely. See generally *Ross v. Blake*, ___ U. S. ___ (136 SCt 1850, 1857 (II) (A), 195 LE2d 117) (2016) ("courts have a role in creating exceptions [to statutory exhaustion provisions] only if Congress wants them to[;] [f]or that reason, mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); *Keys Jet*

18

*Ski v. Kays*, 893 F2d 1225, 1229 (V) (B) (11th Cir. 1990) ("if, indeed, anything is broken, it is up to Congress to fix it.") (citation and punctuation omitted); *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408, 413 (1) (696 SE2d 663) (2010).

3. In its remaining enumeration of error, the County contends that the FDIC essentially advised it that FIRREA's administrative exhaustion requirement did not apply since the FDIC instructed the County to contact Hamilton to determine how Hamilton intended to proceed on the performance bonds. Irrespective of the absence of authority cited in support of this enumeration,[15] we need not consider the County's argument in view of our discussion in Divisions 1 and 2, supra.

In sum, we find that the County was not required to exhaust its administrative remedies pursuant to § 1821 (d) (13) (D) (i) because it sought to enforce a liability rather than obtain payment from an asset of Douglas County Bank. However, because the County's allegations were based upon acts and omissions of Douglas County Bank prior to the Bank's failure, the County was required to exhaust its administrative remedies pursuant to § 1821 (d) (13) (D) (ii) before filing an action against Hamilton. In view of the County's failure to exhaust its remedies, we

---

[15] See Court of Appeals Rules 25 (a) (3), 25 (c) (2).

conclude that the trial court lacked subject matter jurisdiction to consider the County's causes of action. We therefore affirm the trial court's order granting Hamilton's motion to dismiss for lack of subject matter jurisdiction.[16]

*Judgment affirmed. Barnes, P. J., and Rickman, J., concur.*

---

[16] In view of our discussion in Division 2, supra, we do not reach the County's argument that affirming the trial court's order would permit "a successor bank . . . to disregard any and all contractual obligations assumed from a failed bank through the FDIC receivership process. . . ."