**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 25, 2021**

# In the Court of Appeals of Georgia

A21A0370. JONES v. CITY OF ATLANTA.

REESE, Judge.

A. Thomas Jones filed a class action complaint in the Superior Court of Fulton County alleging that certain fees imposed by the Department of Watershed Management ("DWS") of the City of Atlanta (the "City") constituted illegal taxes, and thus he was entitled to a refund of these fees under OCGA § 48-5-380. The superior court granted the City's motion to dismiss for lack of jurisdiction, reasoning that Jones had failed to exhaust his administrative remedies, and, in the alternative, granted the City's motion for judgment on the pleadings. On appeal, Jones argues, among other things, that the trial courted erred in dismissing his complaint for lack of jurisdiction. We agree, and for the reasons set forth infra, reverse in part, vacate in part, and remand.

Viewed in the light most favorable to Jones, as the non-moving party below,[1] the record shows the following. In his complaint, Jones took issue with two fees imposed by DWS: (1) a franchise fee; and (2) a payment in lieu of taxes ("PILOT").[2] According to the City, the franchise fee was used to recoup costs for DWS's use of streets and rights-of-way, and the PILOT was meant to mirror an ad valorem real estate tax that would normally be assessed against privately owned utilities for services such as firefighting, police protection, and use of public works. Jones contended that these were illegal fees, alleging that the fees were paid to the City's general fund, were used for the sole purpose of raising revenue, and did not correspond to actual DWS-related costs to the City.

Jones originally filed a complaint with the commissioner of DWS on March 24, 2017, disputing application of these fees. The commissioner denied Jones's complaint, finding that the fees were lawful. Jones then appealed this decision to the DWS appeals board. On January 26, 2018, the appeals board denied the appeal,

---

[1] See *Douglas County v. Hamilton State Bank*, 340 Ga. App. 801, 802 (798 SE2d 509) (2017).

[2] These fees originated from two 1998 City ordinances, Ordinance Nos. 98-O-1920 and 98-O-1921, and the authority of the City to set water rates can be found in the Atlanta Code of Ordinances §§ 154-111 and 154-112.

determining that it was without jurisdiction to rule on the legality of the City's ordinances. Jones filed the instant complaint in superior court on June 19, 2018.

The City moved to dismiss the complaint for lack of jurisdiction, arguing that Jones had failed to exhaust his administrative remedies. The City contended that, under City Ordinance § 154-31 and OCGA §§ 5-4-1 and 5-4-6, Jones only had 30 days to seek judicial review of the appeal board's decision, and that he had failed to meet this 30-day deadline. The City also filed a motion for a judgment on the pleadings regarding the merits of Jones's claims. Jones responded to the City's motions and filed a motion for partial summary judgment.

The trial court granted the City's motion to dismiss, finding that it lacked subject matter jurisdiction over Jones's claims. The court reasoned that, because Jones "initiated administrative review, he was required to see it through[,]" which included the 30-day deadline for applying for a writ of certiorari under OCGA § 5-4-6. In the alternative, the court ruled that the fees were not illegal taxes, and thus granted the City's motion for judgment on the pleadings and denied Jones's motion for partial summary judgment.

Jones appealed the court's decision to the Supreme Court of Georgia, seeking to invoke the Supreme Court's jurisdiction over constitutional claims. The Supreme

3

Court transferred the case to this Court. The Supreme Court held that the trial court's dismissal was based on lack of jurisdiction, and the trial court erred in addressing additional issues — including Jones's constitutional claims — once it determined that it lacked jurisdiction. The Supreme Court additionally stated: "If the Court of Appeals determines that the trial court erred in its jurisdictional ruling, it should remand the case to the trial court for the entry of a proper order on the other issues raised in [the City's] motion to dismiss." Consequently, although the parties extensively briefed the legality of the franchise and PILOT fees, we address in this appeal only whether the trial court had jurisdiction to consider Jones's claims.

"[W]e review de novo a trial court's grant of a motion to dismiss due to lack of subject matter jurisdiction."[3] Moreover, "the interpretation of a statute is a question of law, which is reviewed de novo on appeal."[4] With these guiding principles in mind, we now turn to Jones's claim of error regarding the court's jurisdiction.

---

[3] *Douglas County*, 340 Ga. App. at 801-802 (citation and punctuation omitted).

[4] *Coleman v. Glynn County*, 344 Ga. App. 545, 548 (1) (809 SE2d 383) (2018) (citation and punctuation omitted).

4

Jones argues that the trial court erred in dismissing his complaint for lack of subject matter jurisdiction. He contends that he was not required to seek a writ of certiorari under OCGA § 5-4-1. We agree.

In interpreting a statute,

we necessarily begin our analysis with familiar and binding canons of construction. In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. And when the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.[5]

OCGA § 48-5-380 (a) (1) requires counties and municipalities to refund to taxpayers any taxes that "have been erroneously or illegally assessed[.]" OCGA § 48-5-380 further provides the process in which taxpayers may challenge erroneous or illegal taxes:

---

[5] *Hojeij Branded Foods v. Clayton County*, 355 Ga. App. 222, 224 (843 SE2d 902) (2020) (citation and punctuation omitted).

(b) Any taxpayer from whom a tax or license fee was collected who alleges that such tax or license fee was collected illegally or erroneously may file a claim for a refund with the governing authority of the county or municipality at any time within one year or, in the case of taxes, three years after the date of the payment of the tax or license fee to the county or municipality. The claim for refund shall be in writing and shall be in the form and shall contain the information required by the appropriate governing authority. The claim shall include a summary statement of the grounds upon which the taxpayer relies. In the event the taxpayer desires a conference or hearing before the governing authority in connection with any claim for a refund, the taxpayer shall so specify in writing in the claim. If the claim conforms to the requirements of this Code section, the governing authority shall grant a conference at a time specified by the governing authority. The governing authority shall consider information contained in the taxpayer's claim for a refund and such other information as is available. The governing authority shall approve or disapprove the taxpayer's claim and shall notify the taxpayer of its action. In the event any claim for refund is approved, the governing authority shall proceed under subsection (a) of this Code section to give effect to the terms of that subsection. No refund provided for in this Code section shall be assignable. Submitting a request for refund to the governing authority is not a prerequisite to bringing suit.

(c) The filing of a request for a refund with the governing authority under subsection (b) of this Code section shall act to stay the time period for initiating suit for a refund. Following the filing of a request for refund with the governing authority, no suit may be commenced until

the earlier of the governing authority's denial of the request for refund or the expiration of 90 days from the date of filing the claim. Alternatively, any taxpayer may forgo requesting a refund from the governing authority under subsection (b) of this Code section and elect to proceed directly to filing suit.

. . .

(f) Nothing contained in subsections (b) or (c) of this Code section shall be deemed the exclusive remedy to seek a refund nor deprive taxpayers of the right to seek a refund mandated by subsection (a) by any other cause of action available at law or equity.

(g) Under no circumstances may a suit for refund be commenced more than five years from the date of the payment of taxes or fees at issue.

To summarize, OCGA § 48-5-380 provides that a taxpayer may choose from two alternative procedures to seek a tax refund: it allows a taxpayer to either directly file suit or to first file a claim with the municipality before seeking judicial review. We note that the previous version of this statute, before it was amended in 2014, required the taxpayer to first file a claim with the municipality before filing suit.[6]

---

[6] See OCGA § 48-5-380 (c) (2011).

"As a general rule, one aggrieved by an administrative decision must exhaust his administrative remedies before pursuing a judicial remedy."[7] "[T]he rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction."[8] However, "[w]ith the exception of giving early warning to the state or local government of its potential liabilities, the interests served by requiring exhaustion are not strong in cases that challenge the constitutionality of state or local taxes. Factual disputes in such cases are minimal or non-existent, and the agency has no expertise in the area."[9]

In this case, pretermitting whether DWS was the proper "governing authority" with whom to challenge the tax under OCGA § 48-5-380 (b),[10] Jones here exhausted

---

[7] *Ga. Power Co. v. Cazier*, 303 Ga. 820, 822 (2) (815 SE2d 922) (2018).

[8] *Ga. Dept. of Behavioral Health & Developmental Disabilities v. United Cerebral Palsy of Ga.*, 298 Ga. 779, 787 (2) (a) (784 SE2d 781) (2016) (citations and punctuation omitted).

[9] *Barnes v. City of Atlanta*, 281 Ga. 256, 258 (1) (637 SE2d 4) (2006) (citation and punctuation omitted).

[10] Jones contends that the governing authority of the City was the Atlanta City Council, and thus his complaint before the DWS was not part of the tax refund

8

his administrative remedies.[11] As acknowledged by the City, Jones's remaining course of action was to seek judicial review of the appeal board's decision. The City contends, however, that Jones was required to abide by the 30-day limitation period set forth in OCGA § 5-4-6.

OCGA § 48-5-380 contains no 30-day limitation period for challenging the agency's decision. Indeed, under a plain reading of the statute, the only restrictions on a plaintiff who has filed a claim with the municipality are that "no suit may be commenced until the earlier of the governing authority's denial of the request for refund or the expiration of 90 days from the date of filing the claim[,]"[12] and "[u]nder no circumstances may a suit for refund be commenced more than five years from the date of the payment of taxes or fees at issue."[13] Those restrictions are met in this case. This reading comports with the overall scope of OCGA § 48-5-380, which allows a

_____

process set forth in OCGA § 48-5-380.

[11] See *Jordan v. City of Atlanta*, 283 Ga. App. 285, 286 (641 SE2d 275) (2007) (plaintiffs exhausted administrative remedies after the agency's final decision denying their appeals).

[12] OCGA § 48-5-380 (c). Given this provision, it is unclear whether *any* additional exhaustion is required, as long as the taxpayer files suit 90 days after the claim to the agency.

[13] OCGA § 48-5-380 (g).

taxpayer to directly file suit, and states that an action under OCGA § 48-5-380 is not the exclusive remedy for a taxpayer.[14]

This interpretation is bolstered by the fact that, in the previous version of OCGA § 48-5-380, the General Assembly *did* impose a limitation period for filing suit after the agency issued its decision. Under OCGA § 48-5-380 (c) (2011), "[n]o action or proceeding for the recovery of a refund shall be commenced after the expiration of one year from the date the claim is denied." Thus, it is clear that the General Assembly knew how to create such a requirement, but chose not to do so.[15] Moreover, neither the current nor the previous version of the statute referenced the certiorari procedure or the corresponding 30-day limitation period.

Accordingly, we reverse the trial court's determination that it lacked jurisdiction due to Jones's failure to file a complaint within 30 days of the appeal board's decision. Consistent with the Supreme Court's transfer order, we vacate the trial court's decision on the City's motion for judgment on the pleadings and Jones's

---

[14] See *Hojeij Branded Foods*, 355 Ga. App. at 227 (holding that a five-year limitation period for taxpayers who directly file suit comports with the overall scope of OCGA § 48-5-380).

[15] See OCGA § 1-3-1 (a) ("In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy.").

motion for partial summary judgment, and remand for a redetermination of those issues.[16]

*Judgment reversed in part and vacated in part, and case remanded. Doyle, P. J., and Brown, J., concur.*

---

[16] We recognize that the superior court's resolution of these issues may not substantially deviate from its prior ruling. However, "we are bound to follow the decisions of our Supreme Court." *State v. Brown*, 315 Ga. App. 282, 284 (726 SE2d 764) (2012).